<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SARAH PRIOLI, *et al.*,<br><br>          Plaintiffs,<br><br>          v.<br><br>COUNTY OF OCEAN, *et al.*<br><br>          Defendants. | Case No. 2:18-cv-00256 (BRM) (ESK)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

          Before this Court is a Motion for Summary Judgment (ECF No. 52) filed by Defendants Joshua Dickinson ("Dickinson") and John Haberbush ("Haberbush") and another Motion for Summary Judgment (ECF No. 53) filed by Defendants County of Ocean ("Ocean"), Sandra Mueller ("Mueller"), Joseph Valenti ("Valenti") (collectively, "Defendants"). Plaintiffs Sarah Prioli ("Prioli"), Elizabeth Clarke ("Clarke"), Nicole Horan ("Horan"), Theresa Wallace ("Wallace"), and Jody Neilson ("Neilson") (collectively, "Plaintiffs") opposed Defendants' Motions for Summary Judgment and filed a Cross Motion for Summary Judgment.[1] (ECF No. 55.) Defendants filed Replies. (ECF Nos. 56, 57.) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing,

---

[1] Plaintiffs did not file a formal motion for summary judgment, but requested summary judgment in their favor in the "Conclusion" section of their brief opposing Defendants' Motions for Summary Judgment. (ECF No. 55-2 at 52 ("Plaintiff's motion for summary judgment must be granted in its entirety.").) The Court construes Plaintiffs' request of summary judgment as a Cross Motion for Summary Judgment.

Defendants' Motions for Summary Judgment are **GRANTED in part and DENIED in part**, and Plaintiffs' Cross Motion for Summary Judgment is **DENIED**.

## I.    BACKGROUND

Plaintiffs are or were female employees of Ocean, a county in the State of New Jersey, at Ocean County Department of Corrections ("OCDC"). (ECF No. 11 ¶¶ 6–10; ECF No. 55-2 at 8.) OCDC employs Dickinson, Haberbush, Mueller, and Valenti. (ECF No. 11 ¶ 11.) OCDC is an inmate correction facility owned and operated by Ocean. (ECF No. 55-2 at 8.) OCDC houses both male and female inmates in separate units, with female officers attending female inmates and male officers attending male inmates. (*Id*.) The reporting structure in OCDC follows a basic chain of command: officers report to sergeants, sergeants report to lieutenants, lieutenants report to captains, captains report to deputy wardens, and deputy wardens report to wardens. (ECF No. 11 ¶ 22.) Prioli and Horan are sergeants. (*Id*. ¶¶ 6, 8.) Clarke was a sergeant at the beginning of this action (*id*. ¶ 7) and retired in 2019 (ECF No. 55-3 ¶ 35). Wallace is a captain. (ECF No. 11 ¶ 9.) Neilson, who is no longer employed with OCDC, was an officer at the beginning of this action. (*Id*. ¶ 10; ECF No. 55-2 at 8.) Plaintiffs are or were supervised by Warden Mueller, Deputy Warden Valenti, Captain Haberbush and Lieutenant Dickinson. (ECF No. 55-2 at 8.)

On or about October 16, 2017, the Equal Employment Opportunity Commission ("EEOC") issued a Right to Sue letter to Prioli, Clarke and Horan (collectively, "Title VII Plaintiffs"), after they filed a charge with the EEOC on November 2, 2016. (*Id*. at 12, 22.) With this, Title VII Plaintiffs have exhausted administrative remedies as required to assert a claim under Title VII of the Civil Rights Act of 1964 ("Title VII," as amended, 42 U.S.C. § 2000e). (*Id*. at 23.) On January 9, 2018, Title VII Plaintiffs filed a Complaint against Defendants, alleging violations of 42 U.S.C. § 1981, Title VII, the New Jersey Law Against Discrimination

("NJLAD," N.J. Stat. Ann. § 10-5, *et seq*.), and the New Jersey Conscientious Employee Protection Act ("CEPA," N.J. Stat. Ann. § 34:19-1, *et seq*.). (ECF No. 1.) On May 4, 2018, Title VII Plaintiffs filed an Amended Complaint, which joined Wallace and Neilson as additional Plaintiffs, asserting: (1) § 1981 claims under Counts 2, 4, 7, 11, 14, 16, 19, 21, 24, 26, and 29; (2) Title VII claims against Mueller, Valenti, Haberbush, and Dickinson (collectively, "Individual Defendants") under Counts 12, 15, 17, 20, 22, 25, 27, and 30; (3) Title VII claims against Ocean for intentional discrimination under Count 1, hostile work environment under Count 5, and retaliation under Count 8; (4) NJLAD claims against Ocean for intentional discrimination under Count 3, hostile work environment under Count 6, and retaliation under Count 9; (5) NJLAD claims against Individual Defendants for aiding and abetting under Counts 13, 18, 23, and 28; and (6) a CEPA claim under Count 10. (ECF No. 11.) Wallace and Neilson need not exhaust administrative remedies pursuant to § 2000e, because they do not assert Title VII claims. (*Id*. ¶ 5.) In the Amended Complaint, Plaintiffs allege there has been "a systematic, continuous pattern and practice of gender discrimination, hostile work environment and/or retaliation against" them caused by Ocean's employees at OCDC. (*Id*. ¶ 1.) Plaintiffs further allege Individual Defendants "knowingly and intentionally aided and abetted Ocean in its discriminatory policies and practices which have deprived Plaintiff[s] of equal employment." (*Id*.) Plaintiffs sought injunctive relief, as well as compensatory and punitive damages due to Defendants' alleged violations of federal and state laws. (*Id*.)

On January 11, 2021, Dickinson and Haberbush filed a Motion for Summary Judgment. (ECF No. 52.) On January 14, 2021, Ocean, Mueller, and Valenti filed another Motion for Summary Judgment. (ECF No. 53.) On February 15, 2021, Plaintiffs opposed Defendants' Motions for Summary Judgment and filed a Cross Motion for Summary Judgment. (ECF No.

55.) On March 1, 2021, Dickinson and Haberbush filed a Reply. (ECF No. 56.) On March 2, 2021, Ocean, Mueller, and Valenti filed another Reply. (ECF No. 57.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *id.* at 255).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id*. at 331 (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (2d ed. 1983)). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the movant may satisfy Rule 56's burden of production by either: (1) "submit[ting] affirmative evidence that negates an

4

essential element of the nonmoving party's claim," or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. (citations omitted). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. Local Rule 56.1(a) imposes an additional procedural requirement for the movant: "On motions of summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion."[2] L.Civ.R. 56.1(a).

---

[2] Plaintiffs claim Defendants did not submit statements of undisputed material facts upon filing Defendants' Motions for Summary Judgment, which means Defendants raise no genuine issue of fact. (ECF No. 55-2 at 20.) This is not true. Defendants submitted statements of material facts upon filing their Motions for Summary Judgment. (ECF No. 52-2 at 10–26; ECF No. 53-3 at 8–29.)

III.    DECISION

    A.    Summary Judgment Is Granted for Defendants on the § 1981 Claims

    Defendants argue Plaintiffs cannot assert § 1981 claims, because Plaintiffs do not allege

any discrimination against them based on their race. (ECF No. 52-2 at 33; ECF No. 53-3 at 35.)

The Court agrees.

    "Because the statute, on its face, is limited to issues of racial discrimination in the making

and enforcing of contracts, courts have concluded that sex-based claims are not cognizable under

42 U.S.C. § 1981." *Anjelino v. New York Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999) (citations

omitted); *see also Hodgkins v. Kontes Chemistry & Life Sci. Prod.*, Civ. A. No. 98-2783, 2000

U.S. Dist. LEXIS 2293, at *33 n.6 (D.N.J. Mar. 6, 2000) ("[Section] 1981 does not provide a

remedy for sex discrimination." (citing *Smith v. Laborers Int'l*, Civ. A. No. 87-2187, 1987 U.S.

Dist. LEXIS 11296, at *6 (E.D. Pa. Dec. 9, 1987)); *Jackson v. Right Stuff*, Civ. A. No. 97-555,

1998 U.S. Dist. LEXIS 21282, at *12 (D.N.J. July 22, 1998) ("[Section] 1981 only prohibits

discrimination based on race, not on gender."). Here, Plaintiffs do not allege they sustained any

racial discrimination. Therefore, Plaintiffs do not have a viable § 1981 claim. Accordingly,

Defendants' Motions for Summary Judgment are granted on Counts 2, 4, 7, 11, 14, 16, 19, 21, 24,

26, and 29.

    B.    Summary Judgment Is Granted for Defendants on the Title VII Claims
          Against Individual Defendants

    Defendants argue Plaintiff cannot assert Title VII claims against Individual Defendants,

because individual employees cannot be held liable under the statute. (ECF No. 52-2 at 34; ECF

No. 53-3 at 35–36.) The Court agrees.

    "Title VII prohibits unlawful employment practices by employers." *Emerson v. Thiel*

*Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (citing 42 U.S.C. § 2000e-2(a)). "[I]ndividual employees

6

are not liable under Title VII." *Id.* (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077–78 (3d Cir. 1996)); *see also Phillips v. Heydt*, 197 F. Supp. 2d 207, 223 (E.D. Pa. 2002) ("Title VII does not impose individual liability on the agents or employees of the employer defendant." (citing *Sheridan*, 100 F.3d at 1077–78)). Also, "Title VII does not permit claims against supervisors in their official capacities." *Gretzula v. Camden Cty. Tech. Sch. Bd. of Educ.*, 965 F. Supp. 2d 478, 485 (D.N.J. 2003) (citations omitted); *see also Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001) ("[C]laims against individual supervisors are not permitted under Title VII." (citing *Sheridan*, 100 F.3d at 1077–78)). Therefore, Plaintiffs cannot assert Title VII claims against Individual Defendants, who are individual employees at OCDC. Individual Defendants' capacity as supervisors will not make them proper defendants under Title VII.

Moreover, because Plaintiffs' employer Ocean is already a Defendant here, Plaintiffs' Title VII claims against Individual Defendants are redundant and warrant dismissal with prejudice. *Gretzula*, 965 F. Supp. 2d at 486 ("Naming a supervisor as a defendant in his official capacity is redundant especially when . . . the employer is named as a [d]efendant . . . . [Plaintiff] suffers no prejudice by the [c]ourt dismissing her official-capacity claim[] against the individual defendant. Plaintiff's Title VII claim against [her supervisor] will be dismissed with prejudice." (quoting *Mitchell v. N.J. Lottery*, Civ. A. No. 04-896, 2006 WL 1344092, at *8 (D.N.J. May 15, 2006))). Accordingly, Defendants' Motions for Summary Judgment are granted on Counts 12, 15, 17, 20, 22, 25, 27, and 30.

### C.      Summary Judgment Is Unwarranted on the Title VII Claims Against Ocean

Because Plaintiffs cannot assert Title VII claims against Individual Defendants, the only remaining issue with the Title VII claims is whether Plaintiffs may have a viable Title VII claim against Ocean. The Court finds Plaintiffs do.

As a threshold matter, Ocean may be held vicariously liable if Individual Defendants or other employees performed discriminatory acts within the scope of their employment with Ocean. *Cardenas*, 269 F.3d at 265 ("An employer is liable for acts committed by its employees in the scope of their employment, which may include some types of disparate treatment of employees by supervisors, such as discriminatory reprimands or job assignments." (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 798–99 (1998))); *see also Hagan v. City of New York*, 39 F. Supp. 3d 481, 495 (S.D.N.Y. 2014) ("An employer is liable under Title VII for violations committed by its employees while acting within the scope of their employment." (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754–56 (1998))). The following analysis will focus on the alleged discriminatory acts committed by Ocean's employees within their scope of employment.

### 1.      Intentional Discrimination Claim

"[T]he basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment" are as follows: "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination;" "Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection;" "Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its

true reasons, but were a pretext for discrimination." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)) (internal quotation marks omitted). "To establish a prima facie case of race or sex discrimination under" Title VII, "a plaintiff must first establish that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (citations omitted). Here, the parties do not dispute Title VII Plaintiffs are women, a protected class, and are qualified for their positions. Therefore, to determine whether Title VII Plaintiffs have established a prima facie case of discrimination, the Court need only address the third and the fourth prongs of a Title VII intentional discrimination claim, *i.e.*, whether Title VII Plaintiffs suffered any adverse employment action and whether that action, if any, gives rise to an inference of gender discrimination.

### a.   Title VII Plaintiffs Have Demonstrated an Adverse Employment Action

An adverse employment action requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ford v. Cty. of Hudson*, 729 F. App'x 188, 195 (3d Cir. 2018) (quoting *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152–53 (3d Cir. 1999)). Here, Title VII Plaintiffs have demonstrated several forms of adverse employment actions.

First, there is evidence that male sergeants were not required to perform strip search of inmates, which was normally an officer's responsibility, in the same way as female sergeants were. (ECF No. 55-2 at 14, 16, 26; ECF No. 55-5 at 31; ECF No. 55-6 at 13, 20; ECF No. 55-7

at 13–14, 29–30.) At the relevant time, Title VII Plaintiffs were sergeants. There is also evidence that the strip search involves significantly different responsibilities from a sergeant's normal work assignment: Sergeant Pressley ("Pressley") commented on the strip search as something "sergeants shouldn't have to do" and "shouldn't be doing;" male officers and sergeants "made jokes about [Clarke] coming down to do [the] grunt work" of strip searches. (ECF No. 55-6 at 13, 20.) Therefore, the alleged strip search requirement imposed on Title VII Plaintiffs could be an adverse employment action. *See Homel v. Centennial Sch. Dist.*, 836 F. Supp. 2d 304, 324 (E.D. Pa. 2011) ("[T]he assignment of additional, burdensome responsibilities is an adverse employment action, particularly when those responsibilities do not come with additional pay." (citations omitted)); *Miller v. Cohen*, 52 F. Supp. 2d 389, 397 (M.D. Pa. 1998) ("[A] dramatic downward shift in skill level or job responsibilities[] constitutes adverse employment action." (citing *Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir. 1994))); *see also Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) ("[A]ssigning more, or more burdensome, work responsibilities, is an adverse employment action." (citations omitted)).

Defendants contend many of the alleged incidents of discrimination are time-barred. (ECF No. 53-3 at 42.) Indeed, some early incidents of strip search that Title VII Plaintiffs allegedly performed may fall outside the applicable statutory period. *See Smith v. Amerada Hess Corp.*, Civ. A. No. 05-560, 2005 U.S. Dist. LEXIS 25822, at *9 (D.N.J. Oct. 28, 2005) ("Under Title VII, a plaintiff must file an EEOC charge within 300 days after her claims of discrimination accrued." (citations omitted)). However, there is a "narrow 'continuing violation' exception to the strict time requirements of Title VII." *Orso v. ITT Corp.*, Civ. A. No. 89-270, 1991 U.S. Dist. LEXIS 6633, at *10 (D.N.J. May 17, 1991) (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)); *see also id.* ("[A]bsent a continuing violation, all discriminatory acts that are

alleged to have occurred more than 300 days prior to the filing of the EEOC charge . . . are time-barred." (citing *Verdin v. Weeks Marine Inc.*, 124 F. App'x 92, 95 (3d Cir. 2005))). To invoke the continuing violation exception, a plaintiff must: (1) "demonstrate that at least one act occurred within the filing period;" and (2) "establish that the [accused discriminatory conduct] is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.'" *Wilson v. U.S. Postal Serv.*, 814 F. App'x 719, 721 (3d Cir. 2020) (quoting *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)); *see also Orso*, 1991 U.S. Dist. LEXIS 6633, at *10 ("The 'continuing violation' theory applies in discrimination lawsuits where the alleged discriminatory action is ongoing by nature, rather than a distinct or isolated event. That theory tolls the statute of limitations until the occurrence of the last instance of the allegedly discriminatory activity." (citations omitted)). Here, there is evidence that, in 2018, male officers and sergeants ridiculed female sergeants for doing the "grunt work" of strip searches. (ECF No. 55-2 at 14; ECF No. 55-6 at 20.) This suggests female sergeants were forced to conduct strip searches in 2018, which is within the applicable statutory period.[3] Also, all Title VII Plaintiffs indicate they were forced to conduct strip searches, which shows the requirement represents more than a distinct or isolated event. Therefore, the continuing violation exception is triggered. The Court may consider all the alleged incidents of forced strip searches, regardless of the time they occurred.

Second, Title VII Plaintiffs refer to their working mandatory overtime as another form of gender-based differential treatment at OCDC. (ECF No. 55-2 at 15.) Such mandatory overtime can be an adverse employment action, because "[a]ssigning an employee to an undesirable schedule can be more than a 'trivial' or minor change in the employee's working conditions."

---

[3] The Title VII claims were first asserted in Title VII Plaintiffs' EEOC charge on November 2, 2016. Because of the 300-day EEOC filing limitations period, an alleged incident that occurred in 2016 or later is not time-barred.

*Mondzelewski v. Pathmark Stores*, 162 F.3d 778, 788 (3d Cir. 1998) (citations omitted). In particular, Horan testified she worked mandatory overtime "as a female officer" more than ten times from 2014 to 2016. (ECF No. 55-7 at 11–12.) Clarke testified she was required to work overtime, while male sergeants were excused from this requirement. (ECF No. 55-3 ¶ 60; ECF No. 55-6 at 15.) Clarke alleges she was told twice in 2017 and 2018 that she was subject to mandatory overtime because she was a female sergeant.[4] (ECF No. 55-6 at 15.) This shows Clarke was subject to mandatory overtime in 2017 and 2018. Therefore, the alleged practice of mandatory overtime, which persisted for several years, represents more than a temporary work arrangement that would not constitute an adverse employment action. *See Young v. St. James Mgmt., LLC*, 749 F. Supp. 2d 281, 298 (E.D. Pa. 2010) ("A temporary reassignment does not constitute . . . an adverse employment action." (citations omitted)); *see also Escalante v. Holder*, Civ. A. No. 09-368, 2011 U.S. Dist. LEXIS 42631, at *30–31 (W.D. Tex. Apr. 20, 2011) ("Although a change in schedule may constitute an adverse employment action, [p]laintiff's schedule change was for a mere three and one half weeks . . . and thus does not constitute an adverse employment action." (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68–69 (2006))); *Twum v. Wireless*, Civ. A. No. 07-2218, 2009 U.S. Dist. LEXIS 145304, at *10 (C.D. Ill. Feb. 25, 2009) ("[T]emporary schedule change . . . fails to constitute an actionable adverse employment action.").

---

[4] Plaintiffs do not indicate who made this alleged statement to Clarke. But the statement is not hearsay here, because it is not offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). Instead, it is introduced to show the time it was allegedly made. Therefore, the Court may consider this alleged statement at the current stage. *Montone v. City of Jersey City*, 709 F.3d 181, 190 n.6 (3d Cir. 2013) ("We hold that these statements made by [the defendant] are not hearsay . . . and thus the [d]istrict [c]ourt properly considered the statements in resolving the summary judgment motions." (citations omitted)).

The assertion of mandatory overtime by Horan and Clarke is not time-barred. The above-mentioned evidence demonstrates they were subject to mandatory overtime from 2016 to 2018, which falls within the applicable statutory period. Also, Horan and Clarke have testified to multiple incidents of mandatory overtime, which shows it is not a distinct or isolated event. Therefore, the continuing violation doctrine is triggered. The Court may consider incidents of mandatory overtime that allegedly occurred to Horan and Clarke prior to 2016.

Third, the alleged denial of Title VII Plaintiffs' requests for day shifts and weekends off could be an adverse employment action. *See Isley v. Aker Phila. Shipyard, Inc.*, 191 F. Supp. 3d 466, 472 (E.D. Pa. 2016) ("A change in shifts can be an adverse employment action." (citing *Mondzelewski*, 162 F.3d at 788)); *see also Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015) (finding that the plaintiff "was subjected to an adverse employment action," in part because the "denial of time off . . . would certainly cause a reasonable worker to think twice about complaining about discrimination"); *Wharton v. Cty. of Nassau*, Civ. A. No. 10-0265, 2013 U.S. Dist. LEXIS 129127, at *18 (E.D.N.Y. Sept. 10, 2013) ("Defendants' denial of [p]laintiff's time-off requests do constitute adverse employment actions.").

Title VII Plaintiffs' assertion of the denial of day shifts and weekends off is not time-barred. In 2017, Title VII Plaintiffs filed a grievance to Ocean to complain about the denial in violation of their seniority right, as the day shifts with weekends off was given to less senior male employees. Part III.C.2.a, *infra*. Eventually, their grievance was rejected. *Id*. The rejection could constitute a further denial of Title VII Plaintiffs' alleged right to day shifts and weekends off. Therefore, at least one instance of such denial, *i.e.*, the rejection, occurred within the applicable statutory period.

In contrast, the alleged failure to promote sustained by Title VII Plaintiffs is not entitled to the Court's consideration. Title VII Plaintiffs claim, in 2013, Prioli was passed over for promotion to sergeant, and the promotion was granted to Mike Pluta, a male employee. (ECF No. 55-2 at 12–13, 28; ECF No. 55-5 at 8.) Title VII Plaintiffs also claim Clarke was skipped over for a promotion opportunity in 2009. (ECF No. 55-2 at 28.) Though such incidents of failure to promote may constitute adverse actions, they are time-barred and cannot trigger the continuing violation doctrine, which "does not apply to revive untimely discrete acts of discrimination such as . . . failure to promote." *Smith*, 2005 U.S. Dist. LEXIS 25822, at *16 n.11 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

Finally, the reprimanding email that Title VII Plaintiffs received is not an adverse employment action. In June 2016, Title VII Plaintiffs allegedly received an email, in which Haberbush, in capital letters, reprimanded them for failing to perform certain duties they were not required to do in a prior incident at the Manchester Police Department. (ECF No. 55-2 at 37, 48; ECF No. 55-3 ¶ 30; ECF No. 55-5 at 29.)[5] The Court "cannot . . . characterize [the email] as adverse employment action[]," because nothing in the record shows Title VII Plaintiffs sustained any "reduction in pay, reassignment, firing, or any similar employment action" due to the reprimands, or that the reprimanding email has been "permanently affixed to [their] employment

---

[5] In their brief in opposition to Defendants' Motions for Summary Judgment, Plaintiffs cite paragraph 28 in their Statement of Uncontested Material Facts ("SOUMF") for the allegation of Haberbush's reprimanding email. (ECF No. 55-2 at 37.) However, it is SOUMF's paragraph 30, not paragraph 28, that refers to the email. (ECF No. 55-3 ¶¶ 28, 30.) This reflects a mistake in Plaintiffs' citations of the SOUMF in their brief: whenever Plaintiffs cite a paragraph in the SOUMF, the number for the cited paragraph is always two less than the number for the paragraph that Plaintiffs intend to cite. For example, when Plaintiffs cite paragraph 50 in the SOUMF for a factual allegation, it is paragraph 52 that addresses that allegation. Recognizing Plaintiffs' mistake, the Court, whenever faced with a citation of a SOUMF paragraph in Plaintiffs' Brief, makes an upward adjustment of two to the cited paragraph number to identify the paragraph that Plaintiffs should have cited.

file." *Weston v. Pa.*, 251 F.3d 420, 431 (3d Cir. 2001); *see also Rivers v. Potter*, Civ. A. No. 05-4868, 2007 U.S. Dist. LEXIS 92590, at *12–13 (D.N.J. Dec, 11, 2007) ("[A] reprimand must have definite consequences for an employee's working conditions to constitute an adverse action under Title VII.").

Therefore, Title VII Plaintiffs have produced evidence that they were subject to adverse employment actions at OCDC in the form of forced strip search, mandatory overtime, and denial of day shifts and weekends off.

> **b.** **Title VII Plaintiffs Have Demonstrated an Inference of Unlawful Discrimination**

The alleged adverse employment actions identified in Part III.C.1.a, *supra*, could give rise to an inference of gender discrimination, because they all involved male employees receiving more favorable treatment than female employees at the same or higher rank. *See Smith v. Sec'y USN*, 843 F. App'x 466, 469 (3d Cir. 2021) (finding "an inference of unlawful discrimination . . . where the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably" (citations omitted)). Further, as for the denial of day shifts and weekends off, there is evidence that it was a retaliative action against Title VII Plaintiffs for undertaking activities to complain about gender discrimination, *see* Part III.C.2.c, *infra*, which supports an inference of gender discrimination. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) ("Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination."). Therefore, Title VII Plaintiffs have presented evidence that the alleged adverse employment actions resulted from a discriminative motive attributable to Ocean.

Accordingly, Title VII Plaintiffs have "made out a prima facie case [of gender discrimination] under Title VII and summary judgment is inappropriate on that basis." *McEady v.*

*Camden Cty. Police Dep't*, Civ. A. No. 16-1108, 2019 U.S. Dist. LEXIS 173274, at \*33 (D.N.J. Oct. 7, 2019). Though Defendants deny any discriminative motive and provide non-discriminatory reasons for the alleged adverse employment actions (ECF No. 53-3 at 19, 23, 37; ECF No. 55-7 at 14; ECF No. 57 at 21–22), it cannot negate Title VII Plaintiffs' prima facie case. *See Burdine*, 450 U.S. at 254 ("[T]he prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978))). Defendants' explanations also do not resolve the factual disputes that preclude summary judgment on the intentional discrimination claim. "Employment discrimination cases center around a single question: why did the employer take an adverse employment action against plaintiff?" *Marzano v. Comput. Sci. Corp.*, 91 F.3d 497, 509 (3d Cir. 1996). "Because this 'is clearly a factual question,' summary judgment is in fact rarely appropriate in this type of case." *Id*. (quoting *Chipollini v. Spencer Gifts*, 814 F.2d 893, 899 (3d Cir. 1987)). "Simply 'by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.'" *Id*. at 509–10 (quoting *Chipollini*, 814 F.2d at 899). "[C]ases in which plaintiff attacks employer's stated reasons for adverse employment action 'must be resolved by a jury and cannot be resolved on summary judgment.'" *Id*. at 510 (quoting *Sempier v. Johnson & Higgins*, 45 F.3d 724, 732–33 (3d Cir. 1995)). Here, because of the factual dispute on the reasons underlying the alleged adverse employment actions, a summary judgment for either party on the Title VII intentional discrimination claim is unwarranted.

2.        **Retaliation Claim**

"To survive summary judgment, the employee must first set forth a prima facie case of retaliation." *Finizie v. Sec'y, U.S. VA*, 751 F. App'x 300, 303 (3d Cir. 2018). This requires a plaintiff to show: "(1) that she engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)). Once a prima facie case of retaliation is established, "[t]he employer then bears the burden of offering a non-retaliatory reason for its action." *Finizie*, 751 F. App'x at 303 (citing *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017)). "Once the employer offers such a reason, the employee bears the burden of showing that the proffered explanation is a pretext and that the real reason was retaliation." *Id.* (citing *Carvalho-Grevious*, 851 F.3d at 257). "[T]o survive summary judgment," the employee "must raise a genuine issue of material fact as to whether the employer's proffered explanation was a pretext for retaliation." *Khazzaka v. Univ. of Scranton*, 148 F. App'x 72, 74 (3d Cir. 2005) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500–01 (3d Cir. 1997)); *see also Wright v. Shore Mem. Hosp.*, Civ. A. No. 11-5583, 2013 U.S. Dist. LEXIS 164264, at *61 (D.N.J. Nov. 19, 2013) ("Defendants are entitled to summary judgment on this [retaliation] claim. Even assuming [p]laintiff establishes a prima facie case of retaliation for taking protected leave, [p]laintiff cannot establish pretext necessary to survive summary judgment."). Accordingly, the Court must determine whether Title VII Plaintiffs have established a prima facie case of retaliation and, if so, whether there is a genuine issue of fact on the pretextuality of Defendants' proffered explanations.

a.      **Title VII Plaintiffs Have Demonstrated Protected Activities**

On the first prong, a "protected 'opposition' activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels*, 776 F.3d at 193 (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). The employee's "complaint must allege that the opposition was to discrimination based on a protected category, such as age or race." *Id*. (citations omitted). "Furthermore, although a plaintiff in a retaliation case 'need not prove the merits of the underlying discrimination complaint,' she must have 'acted under a good faith, reasonable belief that a violation existed.'" *Id*. (quoting *Moore v. City of Phila.*, 461 F.3d 331, 344 (3d Cir. 2006)). "This standard requires an 'objectively reasonable belief' that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute." *Id*. at 193–94 (quoting *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008)).

Here, Title VII Plaintiffs' EEOC complaint filed in November 2016 and the current action filed in January 2018 constitute protected activities. *Skoorka v. Kean Univ.*, Civ. A. No. 09-3428, 2015 U.S. Dist. LEXIS 71697, at *53 (D.N.J. June 2, 2015) ("The first prong of the prima facie case can be satisfied, of course, by a plaintiff's filing of an EEOC complaint."); *McDonough v. Cooksey*, Civ. A. No. 05-135, 2007 U.S. Dist. LEXIS 38410, at *17 (D.N.J. May 15, 2007) ("Filing a Title VII lawsuit is a protected activity." (citing *White*, 548 U.S. at 56)).

Title VII Plaintiffs also refer to two grievances they filed with Ocean as protected activities. (ECF No. 55-2 at 36–37.) In May 2016, Title VII Plaintiffs filed the first grievance (the "First Grievance") to complain they were forced to perform strip search, which was a duty normally assigned to officers, when male sergeants were not required to do the same; the

18

grievance was rejected based on a non-discriminatory explanation provided by Ocean. (*Id*. at 36; ECF No. 55-10 at 25–27.) In April 2017, Prioli and Horan filed the second grievance (the "Second Grievance") to complain of the denial of their requests for day shifts with weekends off, which was granted to a less senior male sergeant, in violation of an alleged seniority policy at OCDC; the grievance was rejected based on a non-discriminatory explanation provided by Ocean. (ECF No. 55-2 at 13, 15, 36–37; ECF No. 55-5 at 10; ECF No. 55-10 at 25.) The two grievances both involved male employees receiving more favorable treatment than female employees at the same or higher rank. Such differential treatments could give rise to an inference of gender discrimination. *See* Part III.C.1.b, *supra*. Therefore, Title VII Plaintiffs could hold an objectively reasonable belief that the conducts complained of in the two grievances constituted gender discrimination. *See McDowell v. Byers Eng'g Co.*, Civ. A. No. 04-3685, 2006 U.S. Dist. LEXIS 102901, at *34 (N.D. Ga. July 13, 2006) ("[I]t was objectively reasonable for [the plaintiff] to believe that [her supervisor] engaged in discriminatory behavior by treating Mark Griffin, a male, more favorably than [p]laintiff, a female."). As a result, the two grievances, as protests of discriminatory employment practices, also qualify as protected activities.

### b.    Title Plaintiffs Have Demonstrated an Adverse Action

On the second prong, "the plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Daniels*, 776 F.3d at 195 (quoting *White*, 548 U.S. at 68). "'Petty slights, minor annoyances, and simple lack of good manners' generally will not suffice." *Id*. at 196 (quoting *White*, 548 U.S. at 68). Materially adverse actions occur when they are "serious and tangible enough to alter an

employee's compensation, terms, conditions, or privileges of employment." *Tourtellotte*, 636 F. App'x at 852 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).

Here, Title VII Plaintiffs claim to have sustained the following categories of adverse actions: (1) denial of day shifts and weekends off; (2) denial of the right to seniority in bidding for day shifts and weekends off; (3) a reprimanding email from Haberbush; and (4) forced strip searches. (ECF No. 55-2 at 48–49.) Because the first two categories may constitute adverse actions for the intentional discrimination claim, *see* Part III.C.1.a, *supra*, they may also constitute adverse actions for the retaliation claim, which adopts a broader definition for the term "adverse action." *Swain v. City of Vineland*, 457 F. App'x 107, 111 (3d Cir. 2012) ("A broader definition of adverse action, 'extend[ing] beyond workplace-related or employment-related retaliatory acts and harm,' applies to retaliation claims than to discrimination claims." (quoting *White*, 548 U.S. at 67)); *see also Vaughn v. State Dep't of Ins.*, Civ. A. No. 19-2314, 2021 U.S. Dist. LEXIS 26323, at *19 (D. Del. Feb. 11, 2021) ("What constitutes adverse employment action under Title VII's anti-retaliation provision is broader than what constitutes the same in the discrimination context."). Moreover, the first two categories of adverse actions satisfy the temporal requirement of the second prong. The rejection of the Second Grievance in 2017 constitutes a denial of day shifts and weekends off in violation of Title VII Plaintiffs' alleged seniority right. *See* Part III.C.1.a, *supra*. This was after Title VII Plaintiffs' protected activities in 2016, *i.e.*, filing the EEOC complaint and the First Grievance. Therefore, Title VII Plaintiffs have established a qualifying adverse action.

In contrast, the reprimanding email is not an adverse action, because it is not shown to tangibly or materially alter Title VII Plaintiffs' work conditions. *See id*. As for the forced strip search, Title VII Plaintiffs fail to demonstrate it satisfies the second prong's temporal

requirement, because they present no evidence on when they started with the forced strip searches. Instead, Title VII Plaintiffs admit they filed the First Grievance to complain about the forced strip searches in May 2016. This means they were subject to the forced strip searches before filing the First Grievance, the earliest protected activity here. In other words, the forced strip searches must have "occurred prior to the protected activity," which "may not form the basis of a Title VII retaliation claim." *Blake v. Penn State Univ.*, Civ. A. No. 09-1182, 2011 U.S. Dist. LEXIS 22928, at *30 (W.D. Pa. Mar. 8, 2011) (citing *Slagle v. Cty. of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006)). Even if an intensified level of forced strip search could constitute an adverse action, nothing in the record demonstrates the forced strip searches intensified after any protected activity.

Defendants contend Plaintiffs did not sustain an adverse action, because none of them have been suspended or demoted. (ECF No. 57 at 22.) The Court disagrees. In the retaliation context, the finding of an adverse action is context-driven and a categorical approach is disfavored. *See Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 472 (1st Cir. 2010) ("After *Burlington Northern* [*& Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)], employment actions are less susceptible to categorical treatment when it comes to the question of whether they are or are not materially adverse."); *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (5th Cir. 2007) (finding that the question of whether an accused conduct is "materially adverse to a reasonable employee . . . is a context-driven inquiry" and "declin[ing] to rule categorically that warnings cannot be adverse actions" (citations omitted)). Therefore, Defendants' contention at most demonstrates a factual dispute on the existence of adverse actions. It cannot negate Title VII Plaintiffs' prima facie case of retaliation. *See Blakey v. Continental Airlines*, Civ. A. No. 93-2194, 1997 U.S. Dist. LEXIS 22068, at *36 (D.N.J. Mar. 24, 1997) (finding that the plaintiff

"established all of the elements of a prima facie case of retaliation," though "there [we]re material facts in dispute").

Accordingly, Title VII Plaintiffs have presented evidence of a qualifying adverse action, in the form of (1) denial of day shifts and weekends off and (2) denial of the right to seniority in bidding for day shifts and weekends off.

### c. Title VII Plaintiffs Have Shown a Reasonable Inference of Causation

On the third prong, the plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," which can be shown "by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, a pattern of antagonism, or temporal proximity 'unusually suggestive of retaliatory motive.'" *Hukman v. Am. Airlines, Inc.*, 796 F. App'x 135, 142–43 (3d Cir. 2019) (citations omitted). "Other 'proffered evidence, looked at as a whole, may also suffice to raise the inference' of an employer's retaliatory motive." *Id.* at 143 (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)). "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (citations omitted); *see also Prise v. Alderwoods Grp., Inc.*, 657 F. Supp. 2d 564, 624 (W.D. Pa. 2009) ("The temporal proximity—more than three months—between [adverse action and protected activity] is insufficient to give rise to an inference of a retaliatory animus." (citing *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760–61 (3d Cir. 2004))).

Here, the temporal proximity consideration alone cannot establish causation. The rejection of the Second Grievance in April 2017 did not occur within three months after any

protected activity, because the First Grievance was filed in May 2016, the EEOC complaint in July 2016, and the current action in November 2016. Title VII Plaintiffs do not specify the date or month of any earlier denial of day shifts and weekends off. Therefore, there is no evidence that the temporal gap between a protected activity and an adverse action is less than three months.

Nevertheless, "where 'the temporal proximity is not so close as to be unduly suggestive,' [courts] have recognized that 'timing plus other evidence may be an appropriate test.'" *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 513 (3d Cir. 2003)); *see also Kachmar*, 109 F.3d at 177 ("[W]here there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." (quoting *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993))); *Krouse*, 126 F.3d at 503–04 ("[W]hen temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus."). "In order to demonstrate a 'pattern of antagonism,' [p]laintiff must put forth evidence such as a 'constant barrage of written and verbal warnings . . . and disciplinary actions . . . soon after plaintiff's initial complaints.'" *Marley v. Donahue*, Civ. A. No. 14-1597, 2017 U.S. Dist. LEXIS 73208, at *20 (D.N.J. May 12, 2017) (quoting *Robinson*, 982 F.2d at 895). "A pattern of antagonism, however, is more than a series of disciplinary actions; a plaintiff must 'offer a basis for linking the disciplinary actions to her protected activity.'" *Id*. (quoting *Barton v. MHM Corr. Servs., Inc.*, 454 F. App'x 74, 79 (3d Cir. 2011)). In addition to temporal proximity and pattern of antagonism, "other circumstantial evidence can support an inference of causation, such as . . . differential treatment of other employees." *Boyd v. Citizens Bank of Pa., Inc.*, Civ. A. No. 12-

23

332, 2014 U.S. Dist. LEXIS 70210, at *82 (W.D. Pa. May 22, 2014) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000)).

Title VII Plaintiffs have presented circumstantial evidence that raises an inference of causation. That is, following the protected activities, Title VII Plaintiffs were allegedly subject to: (1) adverse treatments (including disciplinary actions) that those who did not undertake the protected activities were excused from; and (2) retaliatory animus linked to the protected activities. First, Prioli experienced reduced access to training programs at OCDC after the protected activities. For years, the management sent her to crisis intervention classes only, while her colleagues who did not undertake the protected activities attended many more training programs. (ECF No. 11 ¶ 53; ECF No. 55-3 ¶ 34; ECF No. 55-5 at 32.) Second, the 2016 reprimanding email, as discussed in Part III.C.2.b, *supra*, targeted Title VII Plaintiffs. (ECF No. 55-3 ¶ 104; ECF No. 55-5 at 27.) The email was also sent to Title VII Plaintiffs' supervisors, which allegedly made Title VII Plaintiffs look bad for not doing their job. (ECF No. 55-5 at 27.) This incident happened about a month after Title VII Plaintiffs filed the First Grievance. Third, a group of male employees, including Officer Hoffman and Officer Woods, called this lawsuit "a bunch of crap" and "full of crap," in the presence of Clarke who was working overtime at OCDC.[6] (ECF No. 55-3 ¶ 66; ECF No. 55-6 at 20.) Fourth, a group of male employees watched an online parody of this lawsuit in a booking area at OCDC, and the parody was played out loud in the presence of Clarke. (ECF No. 55-6 at 20.) Clarke asked them to "turn it off" if it was "not work related." (*Id.*) Fifth, Prioli saw a video posted by Pressley on Instagram and then Snapchat,

---

[6] The alleged statements by these male employees are not hearsay, because they are not offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). Instead, they are offered to show the declarants' retaliatory animus. The same applies to the other alleged statements by Ocean's employees, as referred to in this paragraph.

in which Pressley said he "wasn't worried about a lawsuit" and used multiple hashtags—such as "pig vomit," "bacon fat back," and "B"—in reference to some issues listed in the Complaint. (ECF No. 55-2 at 14; ECF No. 55-5 at 14–15.) Prioli testified the hashtag "B" specifically referred to her. (ECF No. 55-5 at 14.) After Prioli reported Pressley's video, Lieutenant Archibald told Prioli John DeMarco's ("DeMarco")[7] comments on the video: DeMarco called Plaintiffs "Babies" and falsely claimed Prioli liked a different video posted on Facebook that satirized this lawsuit. (ECF No. 55-2 at 14; ECF No. 55-5 at 16.) Together, the above circumstantial evidence gives rise to a reasonable inference of causation that meets the third prong.

Therefore, Title VII Plaintiffs have established a prima facie claim of retaliation. The analysis should then focus on Defendants' non-retaliatory explanations, if any, for the alleged adverse actions.

### d. The Non-Retaliatory Explanation Offered by Defendants Could Be Pretextual

"Once the defendant offers evidence of legitimate reasons for the adverse employment actions, plaintiff is given an opportunity to demonstrate that the reasons offered are pretextual." *Clarkson v. Pa. State Police – Bureau of Liquor Ctr. Enf't*, Civ. A. No. 99-783, 2000 U.S. Dist. LEXIS 14673, at *24 (E.D. Pa. Oct. 9, 2000) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999)). "A plaintiff will defeat a motion for summary judgment if he or she can point to evidence from which the factfinder could reasonably either: (1) not believe the employer's stated reasons; or (2) believe that invidious retaliation was more likely the employer's motivation." *Id.* (citing *Jones*, 198 F.3d at 403); *see also Steele v. Pelmor Labs., Inc.*, 725 F. App'x 176, 179 (3d Cir. 2018) ("To survive summary judgment on the issue of pretext, a

---

[7] DeMarco was a male sergeant at OCDC. (ECF No. 55-2 at 13.)

plaintiff must produce evidence from which a reasonable jury could conclude that the employer's proffered explanation is false and that retaliation was the real reason for the adverse employment action." (citing *Carvalho-Grevious*, 851 F.3d at 257–58)). In other words, the plaintiff "must raise a genuine issue of material fact regarding whether the employer's proffered explanation is pretextual or whether, the retaliatory discrimination was more likely than not a determinative factor in the decision." *Epps v. Lidestri Foods, Inc.*, Civ. A. No. 11-3517, 2013 U.S. Dist. LEXIS 41205, at *26 (D.N.J. Mar. 25, 2013) (citing *Kolb v. Burns*, 727 A.2d 525, 531 (N.J. Super. Ct. App. Div. 1999)) (internal quotation marks omitted).

Defendants offer a potentially non-retaliatory reason for the alleged adverse action. That is, those who got day shifts and weekends off had received certain specialized trainings, but Title VII Plaintiffs did not receive such trainings and therefore were not qualified for day shifts and weekends off. (ECF No. 53-3 at 37; ECF No. 55-7 at 14.) However, Defendants did not explain whether the decision of who could receive such specialized trainings was affected by retaliatory considerations. In this regard, Horan testified it was the warden that decided who could take the specialized trainings, and an employee could not bid for the training. (ECF No. 55-7 at 14–15.) Horan also testified Sergeants Ketelaar (a female) and Demarco, who did not undertake any protected activities, received such trainings and got day shifts with weekends off. (*Id.* at 16.) Therefore, the evidence in the record allows a reasonable inference that Title VII Plaintiffs' protected activities caused their failure to receive specialized trainings, which in turn caused the denial of their requests for day shifts and weekends off. A reasonable jury could conclude the purportedly non-retaliatory reason offered by Defendants is in essence retaliatory or pretextual. This gives rise to a material factual issue inappropriate for resolution at this stage. *See Brown v. Vitelcom, Inc.*, 47 F. Supp. 2d 595, 604 (D.V.I. 1999) ("The question of retaliation is particularly

inappropriate for summary judgment disposition, since the primary issue is one of intent and motive." (quoting *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1309 (10th Cir. 1980))); *see also Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) ("Whether an employer's actions are retaliatory often presents a jury question." (citing *White*, 548 U.S. at 71–73)). Accordingly, summary judgment for either party on the Title VII retaliation claim is unwarranted.

### 3.     Hostile Work Environment Claim

"A viable hostile environment claim stems from extremely insensitive conduct against the protected person so egregious that it alters the conditions of employment and destroys the person's equal opportunity in the workplace." *Jackson v. Gannett Co.*, Civ. A. No. 08-6403, 2011 U.S. Dist. LEXIS 85284, at *13 (D.N.J. Aug. 3, 2011) (citing *DeAngelis v. El Paso Mun. Police Offs. Ass'n*, 51 F.3d 591 (5th Cir. 1995)).

> Five constituents must converge to bring a successful claim for a sexually hostile work environment under Title VII: (1) the employee suffered intentional discrimination because of their sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability.

*Weston*, 251 F.3d at 426 (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990)). The following analysis will focus on the above five prongs of a hostile work environment claim.

### a.     Title VII Plaintiffs Have Demonstrated Intentional Discrimination

On the first prong, the plaintiff must show "the alleged hostile acts were 'sex-based' or 'gender-based.'" *Grazioli v. Genuine Parts Co.*, 409 F. Supp. 2d 569, 576 (D.N.J. 2005) (quoting *Durham Life*, 166 F.3d at 148). "The intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit,

and thus should be recognized as a matter of course." *Andrews*, 895 F.2d at 1482 n.3. "Hostile

work environment harassment occurs when unwelcome sexual conduct unreasonably interferes

with a person's performance or creates an intimidating, hostile, or offensive working

environment." *Weston*, 251 F.3d at 425–26 (citing *Meritor Savs. Bank FSB v. Vinson*, 477 U.S.

57, 65 (1986)). "[T]he ordinary tribulations of the workplace, such as the sporadic use of abusive

language, gender-related jokes, and occasional teasing" cannot evidence a hostile work

environment. *Faragher*, 524 U.S. at 788 (quoting B. Lindemann & D. Kadue, Sexual

Harassment in Employment Law 175 (1992)).

Here, Title VII Plaintiffs testified to their exposure to the following sexually derogatory,

offensive, or obscene languages or conducts made by male employees at OCDC. First, Pressley

once referred to Prioli as a "B" in the presence of some officers.[8] (ECF No. 55-3 ¶ 21; ECF No.

55-5 at 14.) The officers who were present informed Prioli of Pressley's alleged remark and were

asked by Prioli to write a report on it.[9] (ECF No. 55-5 at 14.) One of the officers was Brittani

---

[8] The alleged remark by Pressley is not hearsay, because it is not offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). Instead, it is offered to show the declarant's discriminatory intent. The same applies to the other sexually inappropriate statements allegedly made by Ocean's employees, as described in this paragraph.

[9] The statements of the officers that informed Prioli of Pressley's alleged remark are hearsay, and Plaintiffs do not indicate they will produce these officers to testify at trial to allow these statements to be considered at this stage. *See Howley v. Experian Info. Sols., Inc.*, 813 F. Supp. 2d 629, 637 (D.N.J. 2011) ("[H]earsay evidence . . . opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, *i.e.*, in a form that 'would be admissible at trial.'" (quoting *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, (3d Cir. 1990))); *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 95 (3d Cir. 1999) ("[A] hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion." (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996))). However, the officers' reports that describe the alleged remark are "[e]vidence that is 'capable of being admissible at trial'" and "can be considered on a motion for summary judgment." *Robinson v. Hartzell Propeller, Inc.*, 326 F. Supp. 2d 631, 645 (E.D. Pa. 2004) (quoting *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 (3d Cir. 1996)). The reports, which can be produced in discovery, may qualify for the business records exception set forth in Fed. R. Evid. 803(6). Even if there are factual disputes regarding the admissibility of these

Baranyay, who wrote a report under Prioli's request. (*Id.*) Though Prioli was not present when Pressley made the alleged remark, it does not prevent the Court from considering it, because a plaintiff's first-hand knowledge of an incident is not required for that incident to evidence a hostile work environment. *See Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 415 (D.N.J. 2003) ("The fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment." (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997))). Second, after this lawsuit was filed, Pressley referred to Prioli as "B" in an Instagram video. *See* Part III.C.2.c, *supra*. Third, in 2012 or 2013, Lieutenant Henderson (a male) told Prioli that she had "something in [her] shirt pocket" and that her "ass looked good." (ECF No. 55-3 ¶ 27; ECF No. 55-5 at 21.) Fourth, in 2011, then Lieutenant Zentis ("Zentis") tried to get Prioli to work with him at a new jail so that, in Zentis' words, he could "dance all night together" with Prioli. (ECF No. 55-3 ¶ 28; ECF No. 55-5 at 23.) Fifth, once in 2011, Zentis stood next to Prioli, rubbed his arm against Prioli's arm, and told Prioli "don't worry . . . I'll be there with you." (*Id.*) Sixth, in the 1990s, Clarke was told by some male officers that the correction facility "was not the place for a woman" and "the only women that worked in corrections were 'dykes.'"[10] (ECF No. 55-3 ¶ 40; ECF No. 55-6 at 6.) Clarke submitted a report complaining of this incident to her supervisor Marty Varve ("Varve"). (*Id.*)

---

reports, the Court may consider these reports, including Pressley's alleged remark therein, at this stage. *See Vega v. Nestor*, Civ. A. No. 06-2287, 2011 U.S. Dist. LEXIS 166298, at *19–20 (M.D. Pa. Sept. 15, 2011) ("[I]n a case where the parties' pleadings reveal disputes regarding the admissibility of specific evidence, the principles governing consideration of summary judgment motions . . . call upon us to resolve all genuine disputes concerning the admissibility of specific items of evidence in favor of the party opposing the motion.").

[10] Plaintiffs did not specify when this alleged incidence occurred. However, Clarke stated the incidence happened "in the beginning of [her] career." (ECF No. 55-6 at 6.) Clarke began her employment with Ocean on September 9, 1994. (ECF No. 11 ¶ 54.) Therefore, the Court considers this incident happened in the 1990s.

Seventh, in the 1990s, Richard Peterson ("Peterson"), a male booking officer, showed Clarke sexually explicit magazines and asked her to take a look at them. (ECF No. 55-3 ¶ 41; ECF No. 55-6 at 6.) After Clarke refused to do so and asked Peterson to leave, Peterson called her name and asked if she was a "prude." (*Id*.) Clarke testified Peterson sexually harassed her in a similar manner at least ten times in the 1990s. (*Id*.) Eighth, in 2007 and 2008, for several times, while Clarke was driving along with Officer Snead ("Snead"), Snead physically touched Clarke, including by putting his hand on Clarke's leg. (ECF No. 55-3 ¶ 63; ECF No. 55-6 at 17.) After Clarke complained of these incidents to Sergeant Dworkin ("Dworkin"), Dworkin occasionally rode with Clarke, so as to distance Clarke from Snead. (ECF No. 55-3 ¶ 63; ECF No. 55-6 at 17–18.) Ninth, at an unspecified time point, Clarke saw on an employee bathroom's wall a piece of graffiti with the phrase "sucks dick," which was beneath the badge number of a colleague. (ECF No. 55-3 ¶ 50; ECF No. 55-6 at 10.) Tenth, in 2016 or 2017, Horan saw a piece of graffiti on the door knob of an employee bathroom regarding Neilson. (ECF No. 1 ¶ 82; ECF No. 55-7 at 10.) The alleged graffiti included Neilson's badge number, an arrow pointing to the door knob, and the sentence "everyone gets a turn." (*Id*.) The graffiti allegedly seen by Clarke and Horan, though not directed to them, may evidence a hostile work environment. *See Arpajian v. Prop. Sols., Inc.*, Civ. A. No. 03-4666, 2005 U.S. Dist. LEXIS 18120, at *21 (D.N.J. Aug. 16, 2005) ("[I]n making a showing that one's working conditions were affected by harassment to the point at which a reasonable person would consider the working environment hostile, the plaintiff may use evidence that other individuals in the workplace were sexually harassed." (citing *Lehmann v. Toys 'R' Us*, 626 A.2d 445, 457 (N.J. 1993))); *Hargrave*, 262 F. Supp. 2d at 415 ("[A]n employee's awareness of incidents in which other co-workers were subjected to harassment or

discrimination may be relevant in establishing a generally hostile work environment." (citing *Velez v. QVC*, 227 F. Supp. 2d 384, 411 (E.D. Pa. 2002))).

In addition to sexual harassment, Plaintiffs have produced evidence of discriminatory employment practices involving forced strip searches, mandatory overtime, denial of day shifts and weekends off, and failure to promote. *See* Part III.C.1.a, *supra*. Courts in the Third Circuit have considered the evidence of gender-based differential employment decisions and conditions as relevant in finding a hostile work environment.[11] *See, e.g.*, *Jasmin v. N.J. Econ. Dev. Auth.*, Civ. A. No. 16-1002, 2020 U.S. Dist. LEXIS 108510, at *28 (D.N.J. June 22, 2020) (finding the plaintiff's allegation that "she was not promoted because of her race . . . might have satisfied the intentional discrimination element of [p]laintiff's hostile work environment claim"); *Tourtellotte*, 636 F. App'x at 845 ("[T]he incidents to which [the plaintiff] points—which involve more favorable treatment of male coworkers and disparaging remarks—seem to speak more to [the plaintiff's] hostile work environment claim."); *Luder v. Schott N. Am., Inc.*, Civ. A. No. 06-2219, 2008 U.S. Dist. LEXIS 132113, at *33 (M.D. Pa. Oct. 7, 2008) (finding that "[p]laintiff's additional evidence regarding discriminatory treatment of other females may also be considered

---

[11] The Court is aware that some Delaware and Pennsylvania cases have "disallowed hostile work environment claims which are really recast claims of disparate treatment." *Schweizer v. City of Phila.*, Civ. A. No. 17-5388, 2019 U.S. Dist. LEXIS 113315, at *27–28 (E.D. Pa. July 9, 2019) (citing several Delaware and Pennsylvania cases); *see also Lampkins v. Mitra QSR KNE, LLC*, 383 F. Supp. 3d 315, 329 (D. Del. 2019) ("A plaintiff . . . 'cannot base her hostile work environment claim on the gender-based employment decisions that underpin her disparate treatment claim[s].'" (quoting *Parker v. Del. Dep't of Pub. Safety*, 11 F. Supp. 2d 467, 476 (D. Del. 1998))); *Parker*, 11 F. Supp. 2d. at 475 (finding that "the more favorable treatment of men with respect to troop and shift assignments and transfer opportunities could not" evidence a hostile work environment, when "the dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim [we]re apparent" (citations omitted)). However, these cases do not bind this Court. Moreover, they are factually distinguishable, because the plaintiffs in these cases relied solely on gender-based differential treatment at workplace for their hostile work environment claims. Here, Title VII Plaintiffs base their hostile work environment claim on both gender-based differential treatment and sexual harassment.

in determining whether [p]laintiff's working conditions were altered" in proving their hostile work environment claim). This is consistent with many out-of-circuit cases. *See, e.g.*, *Velez v. Roche*, 335 F. Supp. 2d 1022, 1031 (N.D. Cal. 2004) ("[G]ender-based differential treatment may be considered as part of a hostile work environment claim." (citations omitted)); *Hess v. Multnomah Cty.*, 216 F. Supp. 2d 1140, 1155 (D. Or. 2001) ("Although [the plaintiff's] forced resignation is an adverse employment action, her discrimination claim for disparate treatment premised upon that forced resignation is necessarily subsumed into her hostile work environment claim."); *Dudley v. Wal-Mart Stores*, 931 F. Supp. 773, 807 (M.D. Ala. 1996) ("Absence racial slurs . . . a plaintiff also may establish a hostile work environment claim by showing that white employees receive more favorable treatment than their black counterparts."). Therefore, the alleged discriminatory employment practices that Title VII Plaintiffs sustained are also evidence for their hostile work environment claim.

Though some of the alleged incidents of intentional discrimination fall outside Title VII's statutory period, they are entitled to the Court's consideration. "[A] hostile-work-environment claim is a single 'unlawful employment practice' that includes every act composing that claim, whether those acts are independently actionable or not." *Green v. Brennan*, 136 S. Ct. 1769, 1778 (2016) (citing *Morgan*, 536 U.S. at 115–21). "[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Brown v. Norton*, Civ. A. No. 02-5556, 2008 U.S. Dist. LEXIS 41651, at *13 (D.N.J. May 27, 2008) (quoting *Nat'l R.R.*, 536 U.S. at 105); *see also Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) ("Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be

aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006))). Here, some of the alleged incidents of intentional discrimination occurred within Title VII's statutory period, such as the graffiti on the door knob directed to Neilson and the strip search assignment forced onto female sergeants after 2015. The continuing violation doctrine is thereby triggered. The alleged incidents that occurred outside the applicable statutory period may be considered.

Accordingly, the Court finds Title VII Plaintiffs have adequately presented the evidence of intentional discrimination they suffered at OCDC.

### b. There Is Sufficient Evidence that the Accused Conducts of Intentional Discrimination Are Severe or Pervasive

The second prong requires the accused conducts be "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 96 (3d Cir. 2020) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The accused conducts must be "so severe or pervasive as to constitute an objective change in the conditions of employment." *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 287 (3d Cir. 2010) (citing *Faragher*, 524 U.S. at 787).

> [C]ourts must examine the totality of the circumstances in assessing whether the conduct was either severe or pervasive, including but not limited to: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."

*Nuness v. Simon & Schuster, Inc.*, 325 F. Supp. 3d 535, 546 (D.N.J. 2018) (quoting *Mandel*, 706 F.3d at 168). "While a single incident may be sufficiently severe to state a claim, several

incidents of less egregious circumstances may be sufficiently pervasive to surmount the threshold." *EEOC v. Foodcrafters Distrib. Co.*, Civ. A. Nos. 03-2796, 04-2394, 2006 U.S. Dist. LEXIS 11426, at *28 (D.N.J. Feb. 24, 2006) (citations omitted). "However, 'simple teasing, offhand comments, and non-serious isolated incidents' do not meet the bar." *Ivan v. Cty. of Middlesex*, 595 F. Supp. 2d 425, 452 (D.N.J. 2009) (quoting *Hargrave*, 262 F. Supp. at 413).

Here, the alleged incidents of intentional discrimination at OCDC occurred and continued for nearly two decades. *See* Part III.C.3.a, *supra*. Among them are discriminatory employment practices in the forms of forced strip searches, mandatory overtime, denial of day shifts and weekends off, and failure to promote. *Id*. Particularly, there is evidence that the forced strip searches persisted since 2011. (ECF No. 55-5 at 31.) Title VII Plaintiffs testified they were frequently forced to conduct strip searches. (ECF No. 55-5 at 31; ECF No. 55-6 at 20; ECF No. 55-7 at 13.) Therefore, a reasonable fact finder could conclude the discriminatory employment practices at OCDC were pervasive.

In addition, there are a number of alleged incidents of sexual harassment. Most of them were directed at Title VII Plaintiffs. *See* Part III.C.3.a, *supra*. Therefore, they are relevant evidence of a hostile work environment. *C.f. Tourtellotte*, 636 F. App'x at 847–48 (affirming "summary judgment against [the plaintiffs] with respect to their hostile work environment claims," because the plaintiffs only relied on the "evidence of discriminatory conduct directed at other individuals" than themselves, "without demonstrating how conduct directed towards others impacted them in satisfaction of their own prima facie case"). Indeed, some conduct involved physical touching, which "would certainly . . . contribute[] to a hostile work environment." *Moss v. Ret. Value, LLC*, Civ. A. No. 12-157, 2013 U.S. Dist. LEXIS 154824, at *21 (D.N.J. Oct. 29, 2013) (quoting *Grazioli*, 409 F. Supp. 2d at 578 n.13).

Taken together, there is substantial evidence that Title VII Plaintiffs, in the course of nearly two decades, were repeatedly exposed to discriminative employment practices and sexual harassments at OCDC. This allows a reasonable juror to find the accused conducts were severe or pervasive to create a hostile work environment. *See Luder*, 2008 U.S. Dist. LEXIS 132113, at *32 (finding that the evidence of "pornography and graffiti in the workplace, when coupled with the alleged incidents of disparate treatment and harassing behavior of [p]laintiff and other women in the workplace, when viewed in its entirety, [wa]s sufficient to create a jury question with respect to the severe or pervasive element of [p]laintiff's claim"). Accordingly, the second prong is satisfied.

        **c.**      **Title VII Plaintiffs Have Shown They Were Detrimentally Affected by Intentional Discrimination**

The third prong involves "a relatively low hurdle to clear." *Grazioli*, 409 F. Supp. 2d at 578 (citing *Harris*, 510 U.S. at 22). The plaintiff "must only establish that she subjectively perceived her work environment to be hostile or abusive, and not that she suffered 'concrete psychological harm.'" *Id*. (quoting *Harris*, 510 U.S. at 22); *see also Hargrave*, 262 F. Supp. 2d at 421 (observing that "the requirement that the plaintiff demonstrate that she was personally 'detrimentally affected' by the conduct complained of" is "the subjective component of a hostile work environment claim" (citing *Andrews*, 895 F.2d at 1483)); *Spain v. Gallegos*, 26 F.3d 439, 449 (3d Cir. 1994) (recognizing the third prong as a "subjective requirement"). "While psychological harm is not required, '[t]he effect on the employee's psychological well-being is relevant in determining whether the plaintiff actually found the environment abusive.'" *Standen v. Gertrude Hawk Chocolates, Inc.*, Civ. A. No. 11-1988, 2014 U.S. Dist. LEXIS 20075, at *11 (M.D. Pa. Feb. 19, 2014) (quoting *Harris*, 510 U.S. at 23).

The following evidence shows Title VII Plaintiffs were detrimentally affected by the intentional discrimination at OCDC. Prioli testified to a perception of Ocean's continued condoning of its hostile work environment, which made male employees feel secure that their discriminative conducts towards their female colleagues would be overlooked and excused. (ECF No. 11 ¶ 31; ECF No. 55-5 at 21–22.) Prioli claimed to have a perception that Pressley had such a feeling of security, and this perception was "affecting" her personally "on a regular basis." (ECF No. 55-5 at 22.) Clarke testified her work experience at OCDC caused her to suffer depression, for which Clarke had to take mental counseling and daily psychiatric medication. (ECF No. 55-6 at 12–13.) Horan alleged, on several occasions, she felt "scared" by the hostilities at OCDC and "was in fear of losing [her] job." (ECF 55-7 at 8.) Therefore, Title VII Plaintiffs have presented sufficient evidence for the third prong.

### d.   The Accused Conducts Would Detrimentally Affect a Reasonable Woman in Title VII Plaintiffs' Position

"[T]he fourth prong" is "the objective test." *Abramson*, 260 F.3d at 280. It requires a court to "look at all the circumstances," which may "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (quoting *Harris*, 510 U.S. at 23). The plaintiff must "establish that the sexual discrimination . . . would detrimentally affect a reasonable person in like circumstances." *Standen*, 2014 U.S. Dist. LEXIS 20075, at *11 (citing *Mandel*, 706 F.3d at 167).

Here, the accused conducts of intentional discrimination include exposing Title VII Plaintiffs to pornography and harassing languages. *See* Part III.C.3.a, *supra*. This would detrimentally affect a reasonable woman in Title VII Plaintiffs' position. *See Luder*, 2008 U.S. Dist. LEXIS 132113, at *35 ("[A] jury could find that the existence of pornography and the

36

incidents of harassment as alleged here would have a detrimental effect on a reasonable person." (citing *Andrews*, 895 F.2d at 1485–86)); *Andrews*, 895 F.2d at 1485–86 (finding that "[o]bscene language and pornography quite possibly could be regarded as 'highly offensive to a woman who seeks to deal with her fellow employees and clients with professional dignity and without the barrier of sexual differentiation and abuse,'" even though "men may find these actions harmless and innocent" (quoting *Bennett v. Corroon & Black Corp.*, 845 F.2d 104, 106 (5th Cir. 1988))). Moreover, these accused conducts occurred persistently over the course of nearly two decades. *See* Part III.C.3.a, *supra*. "The jury could . . . infer that a reasonable person would not want to be relegated to a life of perpetual worry and anxiety pertaining to a work environment in which their inherent human dignity was continually assailed with each act of sexual harassment." *Standen*, 2014 U.S. Dist. LEXIS 20075, at *13; *see also Williams v. Twp. of Lakewood*, Civ. A. No. 17-11401, 2020 U.S. Dist. LEXIS 235893, at *27 (D.N.J. Dec. 15, 2020) ("A reasonable person in [p]laintiff's shoes would be detrimentally affected by hearing such [discriminative] comments on a regular basis."). Therefore, Title VII Plaintiffs have presented sufficient evidence to satisfy the fourth prong.

### e. Defendants Fail to Negate Respondeat Superior Liability

"The basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker." *Mandel*, 706 F.3d at 169 (citing *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)). "[A]n employer is vicariously liable to a victimized employee 'for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.'" *Hitchens v. Montgomery Cty.*, 278 F. App'x 233, 235–36 (3d Cir. 2008) (quoting *Faragher*, 524 U.S. at 807). In this scenario, "a supervisor must take tangible employment action against the

37

subordinate." *Baker v. Boeing Helicopters*, Civ. A. No. 01-3565, 2004 U.S. Dist. LEXIS 12620, at *12 (E.D. Pa. June 30, 2004) (citing *Ellerth*, 524 U.S. at 760). "[I]f the person charged with creating the hostile environment is the plaintiff's co-worker, and not a supervisor, 'liability exists [only] where the [employer] knew or should have known of the harassment and failed to take prompt remedial action.'" *Hitchens*, 278 F. App'x at 236 (quoting *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)).

Here, Plaintiffs argue Ocean is vicariously liable for the hostile work environment, because its management knew of incidents of sexual harassment at OCDC but failed to take prompt and adequate remedial actions. (ECF No. 55-2 at 44–45.) Defendants did not address the fifth prong, thereby waiving this issue. *Tripodi v. Universal N. Am. Ins. Co.*, Civ. A. No. 12-1828, 2013 U.S. Dist. LEXIS 181807, at *14 n.4 (D.N.J. Dec. 31, 2013) ("[F]ailure to respond to arguments raised on summary judgment . . . essentially acts as a waiver of these issues." (quoting *Skirpan v. Pinnacle Health Hosps.*, Civ. A. No. 07-1730, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010))); *see also GMC v. New A.C. Chevrolet*, 263 F.3d 296, 336 n.5 (3d Cir. 2001) ("[A]n issue is waived unless a party raises it in its opening brief." (quoting *Reform Party of Allegheny Cty. v. Allegheny Cty. Dep't of Elections*, 174 F.3d 305, 316 n.11 (3d Cir. 1999))).

Therefore, Title VII Plaintiffs have established a prima facie hostile work environment claim. But this does not end the inquiry. Defendants, by offering non-discriminatory explanations, contend there were no discriminatory employment practices. *See* Part III.C.1.b, *supra*. Defendants further contend a few isolated incidents of sexual harassment, as allegedly suffered by Plaintiffs, are not sufficiently pervasive or severe for a hostile work environment claim. (ECF No. 52-2 at 40; ECF No. 53-3 at 39.) Therefore, there is a factual issue on the pervasiveness or severity of the accused gender discrimination at OCDC. Such an issue is

usually inappropriate for resolution at the summary judgment stage. *See Syed v. YWCA of Hanover*, 906 F. Supp. 2d 345, 356 (M.D. Pa. 2012) ("The 'severity and pervasive' evaluation of a hostile work environment claim is particularly unsuited for summary judgment, because whether the harassment or discrimination is sufficiently severe or pervasive to create an abusive work environment is 'quintessentially a question of fact.'" (quoting *Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d 422, 429 (E.D. Pa. 2010))); *Price v. Runyon*, 951 F. Supp. 52, 56 (D.N.J. 1999) ("Whether sexual 'harassment is sufficiently severe or pervasive is quintessentially a question of fact.' Therefore, this question was within the province of the jury." (citations omitted)); *see also Derrick v. Okla. Dep't of Corr.*, 247 F. Supp. 3d 1210, 1226 (W.D. Okla. 2017) ("Whether the incidents at issue were as pervasive and severe as to constitute a hostile work environment is a question unsuited for summary judgment and best left for the jury to decide." (citing *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999))); *Crowley v. L.L. Bean, Inc.*, 143 F. Supp. 2d 38, 57 (D. Me. 2001) ("Evaluating the severity and pervasiveness of a harasser's conduct on summary judgment is often difficult and, in many cases, inappropriate."). As a result, neither party is entitled to summary judgment on the Title VII hostile work environment claim.

### 4.    Retaliatory Hostile Work Environment Claim

Though the Amended Complaint does not assert a separate count of retaliatory hostile work environment, Plaintiffs did proceed with a retaliatory hostile work environment theory. (*See* ECF No. 55-2 at 34–41.) Also, the Amended Complaint has alleged a retaliatory hostile work environment at OCDC due to Plaintiffs' protected activities, under Count 8 pursuant to Title VII. (ECF No. 11 ¶¶ 174–75.) Therefore, the Court construes the Amended Complaint to have asserted a Title VII retaliatory hostile work environment claim under Count 8.

"The Third Circuit has recognized retaliatory hostile work environment claims where an employee is subjected to a hostile work environment in retaliation for having engaged in protected activity." *Smith v. RB Distrib., Inc.*, 498 F. Supp. 3d 645, 661 (E.D. Pa. 2020) (citing *Jensen v. Potter*, 435 F.3d 444, 448–50 (3d Cir. 2006)); *see also Middlebrooks v. Teva Pharms. USA, Inc.*, Civ. A. No. 17-412, 2019 U.S. Dist. LEXIS 17609, at *21 (E.D. Pa. Feb. 4, 2019) ("[The Third Circuit] recognizes a retaliatory hostile work environment claim under Title VII." (citations omitted)).

> [I]n order to demonstrate a retaliatory hostile work environment, a plaintiff must prove that: (1) he or she suffered intentional discrimination because of his or her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him or her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.

*Yarnall v. Phila. Sch. Dist.*, 57 F. Supp. 3d 410, 436 (E.D. Pa. 2014) (citing *Jensen*, 435 F.3d at 449). "[A] retaliatory hostile work environment mirrors the general hostile work environment test, except that the discrimination must be because of a protected activity, rather than a plaintiff's protected class." *Id*. In other words, to be relevant in finding a retaliatory hostile work environment, the accused incident of intentional discrimination must have occurred no later than a protected activity by Title VII Plaintiffs. *Paradisis v. Englewood Hosp. & Med. Ctr.*, Civ. A. No. 13-5936, 2016 U.S. Dist. LEXIS 120331, at *44 (D.N.J. Sept. 6, 2016) ("[A] plaintiff cannot show any causal relationship if her only protected activity occurred after the alleged adverse employment action." (citing *Warfield v. SEPTA*, 460 F. App'x 127, 132 (3d Cir. 2012))).

Here, the earliest protected activity is the First Grievance filed in May 2016. Therefore, to be considered for the Title VII retaliatory hostile work environment claim, the accused incidents must have occurred in May 2016 or later. Among the alleged incidents of intentional

discrimination described Parts III.C.1.a and III.C.3.a, *supra*, only the following ones meet this temporal requirement: (1) the rejection of the Second Grievance; (2) Pressley's reference to Prioli as "B" in an Instagram video; and (3) the graffiti on the door knob directed against Neilson.[12]

But meeting the temporal and causality requirement is not enough; the accused incidents must be severe or pervasive. The Court does not discern, and Plaintiffs do not argue, any one of the three alleged incidents, standing alone, is sufficiently severe to evidence a hostile work environment. Also, merely three sporadic incidents of discrimination cannot demonstrate pervasiveness. Therefore, Title VII Plaintiffs' retaliatory hostile work environment claim fails to meet the severity or pervasiveness requirement and cannot survive Defendants' Motions for Summary Judgment. *See Ramirez v. Michael Cetta Inc.*, Civ. A. No. 19-986, 2020 U.S. Dist. LEXIS 180619, at *40 (D.N.J. Sept. 30, 2020) ("Episodic conduct, even if involving vulgar and gender-specific language, is not so severe as to create a hostile work environment." (citations omitted)); *Davis v. SEPTA*, Civ. A. No. 13-6864, 2016 U.S. Dist. LEXIS 2106, at *26 n.11 (E.D. Pa. Jan. 8, 2016) (finding that "isolated remarks [that] constituted intentional discrimination because of [p]laintiff's sex" could not establish a hostile work environment (citations omitted)).

Accordingly, summary judgment is unwarranted on Counts 1 and 5, and Count 8 to the extent it does not involve a retaliative hostile work environment. Defendants' Motion for Summary Judgment is granted on Count 8 to the extent it involves a retaliatory hostile work environment.

---

[12] Though some incidents of forced strip search and mandatory overtime may have occurred after May 2016, they are not shown to be causally linked to a protected activity. Title VII Plaintiffs present no evidence that such incidents started or intensified after any protected activity, and do not even argue the mandatory overtime resulted from a protected activity. Therefore, the alleged incidents of forced strip search and mandatory overtime cannot evidence a retaliatory hostile work environment.

**D.      Summary Judgment Is Granted for Defendants on Some of Plaintiffs'
NJLAD Claims**

NJLAD makes it unlawful for an employer "to discriminate against [an employee] in
compensation or in terms, conditions or privileges of employment." N.J. Stat. Ann. § 10:5-12(a).
"NJLAD does not require a plaintiff to exhaust any administrative remedies before commencing
an action." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 503 n.7 (D.N.J. 2008) (citing
*Mitchell v. W. Union*, Civ. A. No. 06-949, 2007 U.S. Dist. LEXIS 92621, at *12 n.6 (D.N.J. Dec.
18, 2007)). Therefore, Wallace and Neilson, without having exhausted administrative remedies,
may assert NJLAD claims.

On the merits, "courts employ the same framework and standard of review when
analyzing claims under Title VII and NJLAD." *Behrens v. Rutgers Univ.*, Civ. A. No. 94-358,
1996 U.S. Dist. LEXIS 22311, at *13 (D.N.J. Mar. 29, 1996) (citations omitted); *see also
Abramson v. William Paterson Coll.*, 260 F.3d 265, 282 n.13 (3d Cir. 2001) ("Under the NJLAD
and Title VII, the analysis is essentially the same."). If Plaintiffs' "Title VII claim[s] survive[]
summary judgment, [their] NJLAD claim[s] do[] as well." *Abramson*, 260 F.3d at 282 n.13.

Moreover, the time-bar analysis of Plaintiffs' NJLAD claims is essentially the same as
that for their Title VII claims. The NJLAD claims, like the Title VII claims, were first asserted in
the Complaint on January 9, 2018. On May 4, 2018, Wallace and Neilson joined this lawsuit and
asserted additional NJLAD claims, which "relate[] back to the date of" the Complaint, because
they "arose out of the conduct, transaction, or occurrence set out" in the Complaint. Fed. R. Civ.
P. 15(c)(1)(B). Because of NJLAD's two-year limitations period, an accused incident that
occurred on January 9, 2016, or later is not time-barred for the NJLAD claims. As discussed in
Part III.C.1.a, *supra*, an accused incident that occurred in 2016 or later is not time-barred for the
Title VII claims. Since no accused incident here is shown to occur between January 1, 2016, and

42

January 9, 2016, the time-bar analysis for the NJLAD claims should be the same as that for the Title VII claims.

Accordingly, the Court will adopt the same legal framework in Part III.C, *supra*, for the Title VII claims in analyzing Plaintiffs' NJLAD claims.

### 1.     Intentional Discrimination Claim

As discussed in Part III.C.1, *supra*, summary judgment on Title VII Plaintiffs' Title VII intentional discrimination claim is unwarranted. The same conclusion applies to their NJLAD intentional discrimination claim. The Court need only analyze the NJLAD intentional discrimination claim asserted by Wallace and Neilson.

As for Wallace, there is no evidence for a qualifying adverse employment action. Wallace testified she once worked mandatory overtime as a sergeant at the end of 2016.[13] (ECF No. 55-3 ¶ 124; ECF No. 52-9 at 8–9.)[14] But Wallace presented no information on how often she had to work mandatory overtime, and only stated the information of her mandatory overtime was documented in an overtime logbook. (ECF No. 52-9 at 8–9.) The said overtime logbook is not in the record. Therefore, Plaintiffs point to merely one isolated incident of Wallace's mandatory

---

[13] As discussed in Part III.D.3, *infra*, Wallace's testimony of the 2016 incident of mandatory overtime factually conflicts with other testimonial evidence from Wallace. The Court need not address this conflict for Wallace's NJLAD intentional discrimination claim. As illustrated below, even accepting as true Wallace's testimony of the 2016 incident, the Court does not find the incident may amount to an adverse employment action.

[14] To present evidence for the factual allegations concerning Wallace, Plaintiffs' SOUMF cites portions of Wallace's deposition transcript in Plaintiffs' Exhibit E. (ECF No. 55-3 ¶¶ 107–29.) However, the cited portions of Plaintiffs' Exhibit E do not match with the allegations in the SOUMF. (*See id*.; ECF No. 55-8.) The Court finds Plaintiffs should have cited a different deposition transcript of Wallace, which is presented in Defendants' Exhibit F. (ECF Nos. 52-8, 52-9.) The portions of Defendants' Exhibit F, as indicated by the page and line numbers that the SOUMF cites for Plaintiffs' Exhibit E, match with the allegations in the SOUMF. (*See id*.; ECF No. 55-3 ¶¶ 107–29.) Recognizing Plaintiffs' mistake, the Court refers to Defendants' Exhibit F to examine Wallace's deposition testimony that relates to the factual allegations in the SOUMF.

overtime, which at most reflects a temporary work arrangement that cannot qualify as an adverse employment action. *See* Part III.C.1.a, *supra*. This is especially so when Plaintiffs do not argue the mandatory overtime had any tangible impact on Wallace's compensation or work responsibilities. *See Senter v. Stericycle, Inc.*, Civ. A. No. 11-3713, 2013 U.S. Dist. LEXIS 151437, at *11 (D. Minn. Oct. 22, 2013) ("Nor does [the plaintiff's] temporary schedule change constitute an adverse employment action under Title VII . . . . Most importantly, [the plaintiff] does not allege his reassignment resulted in the loss of benefits or pay or any change in responsibilities. This alone could potentially defeat his [Title VII discrimination] claim." (citing *Tademe v. St. Cloud State Univ.*, 328 F.3d 982, 992 (8th Cir. 2003))); *Godoy v. Maplehurst Bakeries, Inc.*, 747 F. Supp. 2d 298, 315 (D.P.R. 2010) ("[W]ithout any evidence on the record of a corresponding loss of salary, position, prestige, or any other material measurement, plaintiff fails to establish that her temporary change in work schedule qualifies as an adverse employment action." (citing *Melton v. Nat'l Dairy LLC*, 705 F. Supp. 2d 1303, 1329 (M.D. Ala. 2010))); *Keeton v. Flying J, Inc.*, 429 F.3d 259, 263 (6th Cir. 2005) ("[W]hen an otherwise adverse employment action is rescinded before the employee suffers a tangible harm, the employee has not suffered an adverse employment action." (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001))); *Daniel v. Spectrum Stores, Inc.*, 381 F. Supp. 2d 1368, 1374 (M.D. Ga. 2005) ("Standing alone, a single, isolated schedule change certainly would not constitute a tangible employment action.").

Wallace also testified, after returning from a medical leave in October 2018, she was placed in a room for three months with secretaries, when "[n]o other captain had ever sat out there before." (ECF No. 55-2 at 39; ECF No. 55-3 ¶ 125.) Even if this alleged seat placement constitutes an adverse employment action, it does not give rise to an inference of gender

discrimination, because it reflects a differential treatment between Wallace and other captains, not between female and male captains. Further, it is not shown to be a retaliative action that may indicate gender discrimination, because there is no evidence for a causal relationship between the alleged seat placement and Wallace's protected activity. *See* Part III.C.1.b, *supra*. First, the temporal proximity consideration cannot establish causation. The alleged seat placement incident occurred more than three months after Wallace joined this lawsuit in May 4, 2018, which is the only protected activity undertaken by Wallace. Second, Plaintiffs point to no evidence that Wallace was subject to a pattern of antagonism at OCDC after joining the lawsuit. Third, though Wallace claims an unidentified person told her that the seat placement was a "punishment for this lawsuit," this is hearsay evidence not entitled to the Court's consideration. Plaintiffs neither indicate they will produce this unidentified teller at trial to testify, *see* footnote 9, *supra*, nor provide any information about this unidentified teller so that the Court may find the teller's alleged statement is not hearsay but a "statement . . . offered against" Ocean and "made by [Ocean's] agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Fourth, Wallace made the following concession about the alleged seat placement incident:

> I came back from a leave of absence from a work related injury. For nine months I was out. I was brought back on light duty, wasn't allowed inside securities. *So* they sent me in the cubicle with secretaries in the warden office.

(ECF No. 55-8 at 16 (emphasis added).) Wallace's concession suggests a non-retaliatory reason for her seat placement: she was on light duty after coming back from a medical leave and was not allowed inside securities. Taken together, there is not sufficient evidence that the alleged seat placement represents an act of retaliation which implicates gender discrimination.

The Court declines to consider the other alleged incidents of intentional discrimination sustained by Wallace, because they did not occur within NJLAD's two-year statutory period. (*See* ECF No. 55-3 ¶¶ 107–23, 126–29.) The continuing violation doctrine does not apply to these alleged incidents, because there is no evidence that any similar incidents occurred to Wallace within the two-year statutory period. *See Sosa v. Cty. of Hudson*, Civ. A. No. 20-777, 2020 U.S. Dist. LEXIS 178431, at *6 (D.N.J. Sept. 28, 2020) ("To establish whether an act is 'continual,' the [c]ourt will consider '(1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently.' And if 'the last act [in] the continuing practice falls within the limitations period . . . the court will grant relief for the earlier related acts that would otherwise be time barred.'" (citations omitted)); *Powell v. Pa. Dep't of Corr.*, 12-2455, 2019 U.S. Dist. LEXIS 119937, at *22–23 (M.D. Pa. July 15, 2019) ("[A] plaintiff seeking to establish a continuing violation in an employment discrimination case 'must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period.'" (quoting *Mandel*, 706 F.3d at 165–66)).

Neilson argues her removal from a booking desk constitutes an adverse employment action. (ECF No. 55-3 ¶ 131; ECF No. 55-9 at 4.) The Court disagrees. First, Plaintiffs fail to link this alleged incident to gender discrimination. Neilson concedes the removal was due to some personal issues between herself and her female supervisor, Sergeant Ketelaar ("Ketelaar"). (*Id.*) Neilson goes further to explain this personal issue: Ketelaar was possibly jealous of Neilson at the booking desk, where "a lot of cops . . . would talk to [Neilson] instead of [Ketelaar]." (ECF No. 55-9 at 4.) In other words, Neilson admits this alleged incident did not result from gender discrimination. Second, Neilson alleged this isolated incident happened in 2015. (*Id.* at 3–4.) Therefore, it is time-barred and not entitled to the Court's consideration.

The other alleged incidents of intentional discrimination that affected Neilson are irrelevant. Neilson maintains she received emails that contained sexually inappropriate information (ECF No. 55-3 ¶ 133; ECF No. 55-9 at 8) and was exposed to sexually offensive graffiti directed at her. *See* Part III.D.3, *infra*. However, such "unnecessary derogatory comments . . . do not rise to the level of . . . adverse employment action." *Pittsburgh*, 120 F.3d at 1300; *see also Wesley v. PNC Bank*, Civ. A. No. 19-5052, 2020 U.S. Dist. LEXIS 233043, at *12 (E.D. Pa. Dec. 11, 2020) (finding that a plaintiff's "allegations about racist graffiti in the workplace and the employer's failure to promptly remove it, in conjunction with co-workers' racially insensitive comments," did not "amount[] to a change in the terms or conditions of [the plaintiff's] employment" so as to constitute an adverse employment action (quoting *Woodard v. PHB Die Casting*, 255 F. App'x 608, 609–10 (3d Cir. 2007))).

Therefore, Title VII Plaintiffs, but not Wallace and Neilson, have established a prima facie case of intentional discrimination under NJLAD.

### 2.    Retaliation and Retaliatory Hostile Work Environment Claims

The parties did not address the CEPA claim (Count 10) in their motions for summary judgment. Therefore, at this stage, the Court need not address the merits of the CEPA claim. However, the Court must dismiss Plaintiffs' NJLAD retaliation and retaliatory hostile work environment claims, because of CEPA's waiver provision, which provides: "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law." N.J. Stat. Ann. § 34:19-8.

"The CEPA is specifically designed to protect whistle-blowers from retaliatory discharges, suspensions, demotions and the like, but it does not provide a cause of action for

generalized harassment." *Caver v. City of Trenton*, 420 F.3d 243, 257 n.12 (3d Cir. 2005) (citations omitted). "New Jersey courts have interpreted [CEPA's waiver] provision to mean that instituting a claim under CEPA will waive any state law claim that is 'substantially related,' in the sense of requiring the same proofs." *Skoorka*, 2015 U.S. Dist. LEXIS 71697, at *37 (quoting *Young v. Schering Corp.*, 660 A.2d 1153, 1160 (N.J. 1995)); *see also Williams*, 2020 U.S. Dist. LEXIS 235893, at *47 ("[O]ther State law causes of action arising out of the same allegations supporting a CEPA claim are precluded by the bringing of a claim under CEPA." (quoting *Blakey v. Continental Airlines*, Civ. A. No. 93-2194, 1995 U.S. Dist. LEXIS 21856, at *5 (D.N.J. June 16, 1995))). As a result, "a claim of retaliation under CEPA waives a related claim of retaliation under NJLAD." *Skoorka*, 2015 U.S. Dist. LEXIS 71697, at *38 (citations omitted); *see also Simon v. Shore Cab, LLC*, Civ. A. No. 13-6290, 2014 U.S. Dist. LEXIS 83435, at *18 (D.N.J. June 19, 2014) ("[R]etaliation claims under the [NJ]LAD necessarily fall within the CEPA waiver provision." (citations omitted)). "Conversely, claims that do not require a showing of retaliation and require a showing of different proofs are not waived by the institution of the CEPA claim." *Simon*, 2014 U.S. Dist. LEXIS 83435, at *18 (citations omitted).

Therefore, Plaintiffs' NJLAD retaliation claim may be precluded by CEPA's waiver provision. The NJLAD retaliatory hostile work environment claim, asserted under Count 9 in the Amended Complaint (*see* ECF No. 11 ¶¶ 184–85), may also be precluded, because it in essence represents a form of retaliation. *Anselmo v. City of Phila.*, Civ. A. No. 18-5160, 2021 U.S. Dist. LEXIS 18176, at *27 (E.D. Pa. Jan. 29, 2021) ("A retaliation claim can take the form of a 'traditional' retaliation claim or a hostile work environment retaliation claim."); *see also Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 567 n.5 (7th Cir. 2004) ("The creation of a hostile work environment can be a form of retaliation." (citing *Knox v. State of Ind.*, 93 F.3d 1327, 1334 (7th

Cir. 1996))). But Plaintiffs' NJLAD claims for intentional discrimination, hostile work environment, and aiding and abetting will not be covered.

In the Amended Complaint, Plaintiffs' NJLAD claims for retaliation and retaliatory hostile work environment under Count 9 incorporate the same factual allegations with their CEPA claim under Count 10. (*See* ECF No. 11 ¶¶ 182–201.) In other words, "[t]he same actions by Defendants which allegedly violate []CEPA are also alleged to violate the NJLAD." *Simon*, 2014 U.S. Dist. LEXIS 83435, at *19. "Therefore, these [NJLAD] claims are 'subsumed' under the CEPA waiver provision" and warrant dismissal. *Id.* (citing *Smith v. Twp. of E. Greenwich*, 519 F. Supp. 2d 493, 510 (D.N.J. 2007), *aff'd*, 344 F. App'x 740 (3d Cir. 2009)). Accordingly, Defendants' Motions for Summary Judgment is granted on Plaintiffs' Count 9.

### 3.      Hostile Work Environment Claim

As discussed in Part III.C.3, *supra*, summary judgment on Title VII Plaintiffs' hostile work environment claim under Title VII is unwarranted. The same conclusion applies to their hostile work environment claim under NJLAD. The Court need only analyze the NJLAD hostile work environment claim asserted by Wallace and Neilson.

Wallace points to six incidents of potential intentional discrimination: (1) in 2012, Wallace was held back on a promotion opportunity, so as to facilitate Valenti in securing a deputy warden position (ECF No. 52-8 at 20; ECF No. 55-2 at 28; ECF No. 55-3 ¶ 108); (2) in 2007, Wallace was removed from the booking desk because of her mistake in releasing an inmate, but Haberbush was not removed from the booking desk after making a similar mistake (ECF No. 52-8 at 23, 27, 30, 34; ECF No. 55-2 at 33; ECF No. 55-3 ¶ 111); (3) in 2014, Wallace requested a change to day shift and was denied, and the day shift was given to Valenti (ECF No. 52-9 at 41–42; ECF No. 55-2 at 40; ECF No. 55-3 ¶¶ 127–28); (4) in April 2012, after Wallace

was promoted to lieutenant, she was required to walk the prison floor (like a sergeant), move from her post, and work midnight shift (which was normally assigned to the least senior lieutenant), when newly promoted male lieutenants were not subjected to such requirements (ECF No. 52-8 at 72–73; ECF No. 55-2 at 16–17; ECF No. 55-3 ¶¶ 109–10); (5) in 2010, Lieutenant Martin, a male, commented to Wallace that she should stop looking at his butt (ECF No. 52-8 at 59; ECF No. 55-2 at 17; ECF No. 55-3 ¶ 118); (6) at the end of 2016, Wallace once worked mandatory overtime as a female sergeant (ECF No. 52-9 at 8–9; ECF No. 55-3 ¶ 124).

Among these alleged incidents, only the sixth one on mandatory overtime occurred within NJLAD's two-year statutory period. However, Wallace's testimony on working mandatory overtime as a sergeant in 2016 conflicts with her testimony on the fourth incident that she was promoted from sergeant to lieutenant in April 2012. The Amended Complaint also confirms "Wallace was finally promoted in April 2012, to Lieutenant." (ECF No. 11 ¶ 109.) Wallace does not allege she was demoted after the 2012 promotion. In other words, if Wallace's testimony on the fourth incident and the Amended Complaint are true regarding her rank, then Wallace could not be a sergeant in 2016, as indicated in the sixth incident. Therefore, Wallace's testimony on the sixth incident contradicts with that for the fourth incident. Such a contradiction is material, because whether Wallace was a sergeant or lieutenant in 2012 is directly related to whether the work assignments imposed on her in the fourth incident represent gender-based differential treatment.

"[W]hen a court is confronted with self-contradictory deposition testimony, and '[t]his contradictory testimony leads to two possible conclusions,' on summary judgment the court 'must accept the [conclusion] most favorable to [the nonmovant].'" *Blevins v. Katherman*, Civ. A. No. 07-633, 2010 U.S. Dist. LEXIS 4376, at *5 n.3 (E.D. Pa. Jan. 20, 2010) (quoting *Rossi v.*

*Standard Roofing, Inc.*, 156 F.3d 452, 476 n.14 (3d Cir. 1998)). If the Court accepts as true Wallace's testimony on the sixth incident, then her testimony on the fourth incident should be disregarded as false statements. In that case, the only alleged incidents of intentional discrimination that the Court may consider are five discrete incidents that occurred between 2007 and 2016, including a failure to promote (the first incident), a disciplinary action (the second incident), a denial of day shift (the third incident), a sexually offensive comment (the fifth incident), and one instance of working mandatory overtime (the sixth incident). Even if the continuing violation doctrine applies, so that all the five alleged incidents may be considered, the Court does not discern, and Plaintiffs do not argue, any one of them may constitute "a rare and extreme case in which a single incident will be so severe that it would . . . make the working environment hostile." *Percella v. City of Bayonne*, Civ. A. No. 14-3695, 2021 U.S. Dist. LEXIS 45409, at *35 (D.N.J. Mar. 10, 2021) (quoting *Taylor*, 706 A.2d at 689). As a result, these five discrete incidents that sporadically occurred over the course of ten years cannot indicate a hostile work environment. *See Williams v. Pa. Human Rels. Comm'n*, Civ. A. No. 14-1290, 2016 U.S. Dist. LEXIS 160760, *76 (W.D. Pa. Nov. 21, 2016) ("[T]he timing and isolated nature of those differing incidents, occurring sporadically and involving different individuals, do not support a hostile work environment."); *Vera v. Pa. Higher Educ. Assistance Agency*, Civ. A. No. 09-341, 2013 U.S. Dist. LEXIS 38341, at *42 (M.D. Pa. Mar. 20, 2013) ("[W]here the allegations of allegedly hostile discriminatory conduct rest upon isolated or discrete incidents, a hostile work environment claim under Title VII will fail." (citing *Fusco v. Bucks Cty. of Pa.*, Civ. A. No. 08-2082, 2009 U.S. Dist. LEXIS 118924, at *25 (E.D. Pa. Dec. 18, 2009))); *Elmiry v. Wachovia Corp.*, Civ. A. No. 04-3621, 2007 U.S. Dist. LEXIS 84919, at *42 (D.N.J. Nov. 16, 2007) ("A hostile work environment claim may not 'rely upon casual, isolated, or sporadic incidents.'"

(quoting *Boyer v. Johnson Matthey, Inc.*, Civ. A. No. 02-8382, 2005 U.S. Dist. LEXIS 171, at *58 (E.D. Pa. Jan. 7, 2005))). Conversely, if the Court accepts as true Wallace's testimony on the fourth incident, then her testimony on the sixth incident should be disregarded as false statements. In that case, none of the remaining alleged incidents occurred within NJLAD's statutory period, which means Wallace's hostile work environment claim will be time-barred. Either way, Wallace does not have a viable hostile work environment claim.

The other alleged incidents that occurred to Wallace do not involve sexual harassment or gender-based differential treatment. (*See* ECF No. 55-2 at 16–17.) In their brief, Plaintiffs allege Wallace was once "forced to teach without an assistant whereas other male teachers had an assistant." (*Id.* at 17.) Though this differential treatment, as alleged, could indicate gender discrimination, Plaintiffs provide no evidence for it. In the relevant portions of Wallace's deposition testimony, Wallace did not state other male teachers had an assistant. (ECF No. 52-9 at 57–58; ECF No. 55-3 ¶ 117.) Therefore, this alleged teaching incident does not involve gender-based differential treatment that may implicate intentional discrimination.

In addition, Wallace claims, after returning from a medical leave in October 2018, her work laptop was removed and never returned. (ECF No. 55-2 at 39; ECF No. 55-3 ¶¶ 125, 163; ECF No. 55-8 at 16.) However, this alleged laptop incident is not evidentially linked to gender discrimination, because it was directed against Wallace and did not involve gender-based differential treatment. Also, it is not linked to retaliation that may implicate gender discrimination, because Plaintiffs fail to show the alleged removal was caused by Wallace's protected activity. First, the temporal proximity consideration cannot establish causation. Plaintiffs produce no evidence as to when the alleged removal occurred. Wallace only testified she noticed her laptop was missing in October 2018. (ECF No. 55-8 at 16.) There is no evidence

that her laptop was removed within three months after Wallace joined this lawsuit in May 4, 2018. Second, Plaintiffs point to no evidence that Wallace was subject to a pattern of antagonism at OCDC after joining the lawsuit. Third, Wallace suggested a non-retaliatory reason for the alleged removal: while Wallace was away, Lieutenant Stuart needed Wallace's laptop for a training class. (*Id*.) Therefore, the alleged laptop incident does not give rise to an inference of retaliation and, consequently, gender discrimination. *See* Part III.C.1.b, *supra*.

The Court need not separately address the remaining accused incidents that occurred to Wallace, because they do not on their face implicate gender discrimination. (*See* ECF No. 55-2 at 16–17.)

Neilson asserts three gender-based hostile acts she sustained at OCDC: (1) the wrongful removal from booking; (2) the receipt of emails containing sexually inappropriate information, including one on November 15, 2015; and (3) the graffiti directed to her in the employee bathroom. (ECF No. 55-3 ¶¶ 131, 133–35.) The first two acts are irrelevant to gender discrimination: the alleged removal of Neilson from booking is not evidentially linked to gender discrimination, *see* Part III.D.1, *supra*; Plaintiffs point to no evidence of sexually inappropriate content in the emails that Neilson allegedly received; Neilson even conceded she "c[ould]n't remember clearly" any "offensive and sexually explicit" content in the email she received on November 15, 2015. (ECF No. 55-9 at 8.)

Nevertheless, Neilson does have a prima facie case of hostile work environment based on the graffiti she was allegedly exposed to. As a threshold matter, Neilson's hostile work environment claim is not time-barred, because one alleged instance of Neilson's exposure occurred on March 28, 2018 (*id*. at 9), which falls within NJLAD's statutory period. This triggers the continuing violation doctrine, which allows the Court to consider all the graffiti

Neilson was allegedly exposed to. On the merits, Neilson has met her prima facie burden to prove the five prongs of a hostile work environment claim. First, the graffiti were sexually derogatory and constituted incidents of intentional discrimination. Neilson testified the graffiti referred to her, by her badge number 472, as a "cum dumpster," "whore," "slut," "witch," and someone with whom "everyone gets a turn." (*Id.*) Second, the graffiti appeared pervasively throughout Neilson's employment at OCDC. Neilson testified she witnessed or was informed of 30 to 40 pieces of graffiti in the employee bathrooms "since probably the day [she] started." (*Id.*) Neilson added the pieces of graffiti normally stayed for a while before they were painted over, but would come back again immediately. (*Id.*) Third, Neilson subjectively perceived the environment at OCDC as unfavorable, and such a perception was related to her decision to resign from OCDC. Upon her resignation, Neilson told Mueller that she felt "a lot of people" at OCDC were "bad" to her. (*Id.* at 10.) Fourth, the graffiti contains language that would detrimentally affect a reasonable woman in Neilson's position. *See Percella*, 2021 U.S. Dist. LEXIS 45409, at *35 ("If the jury credited [plaintiff's] testimony that the phrase on the magnet means that [the plaintiffs] are 'sluts,' then an objectively reasonable person might find that the presence of multiple such images near a woman's work station could alter the conditions of her employment and render the working environment hostile."); *see also King v. Metro. Life Ins. Co.*, Civ. A. No. 96-476, 1997 U.S. Dist. LEXIS 8636, at *17 (S.D.N.Y. June 18, 1997) (considering the plaintiff's "more general allegations that she was constantly called a whore or prostitute [as] facts upon which a reasonable juror [could find] she worked in a hostile work environment with respect to sex"). Fifth, Defendants did not discuss the fifth prong and therefore waived the respondeat superior issue.

54

Accordingly, Title VII Plaintiffs and Neilson, but not Wallace, have established a prima facie case of hostile work environment under NJLAD. Summary judgment for either party on the NJLAD hostile work environment claim is unwarranted, because of the factual dispute on the pervasiveness or severity of the alleged incidents of intentional discrimination. *See* Part III.C.3, *supra*.

### 4.   Aiding and Abetting Claim

Defendants contend Plaintiffs provide no evidence of Individual Defendants' aiding and abetting under the NJLAD, which cannot be demonstrated by failing to act or do more to prevent the alleged gender discrimination. (ECF No. 52-2 at 44; ECF No. 53-3 at 42.) The Court agrees.

The NJLAD makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NJLAD], or to attempt to do so." N.J. Stat. Ann. § 10:5-12(e). The aiding and abetting liability in the NJLAD has no counterpart in Title VII. *See Cortes v. Univ. of Med. & Dentistry*, 391 F. Supp. 2d 298, 314 (D.N.J. 2005) ("While the Third Circuit has clearly foreclosed any possibility of individual liability under Title VII, the NJLAD does contain a separate provision which expressly contemplates individual liability for those who 'aid or abet' an employer's unlawful employment actions." (citing *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999))). Therefore, Plaintiffs' NJLAD aiding and abetting claims must be analyzed separately from Title VII's legal framework.

"The NJLAD does not provide for individual liability for aiding and abetting if the employer is not found liable." *Tourtellotte*, 636 F. App'x at 856 (citing *Cicchetti v. Morris Cty. Sheriff's Off.*, 947 A.2d 626, 645 (N.J. 2008)); *see also Jackson v. Del. River & Bay Auth.*, Civ. A. No. 99-3185, 2001 U.S. Dist. LEXIS 26843, at *64–65 (D.N.J. Nov. 26, 2001) ("If the

NJLAD does not apply to the employer [], then no individual aiding and abetting liability may be found."). Here, Plaintiffs have asserted the NJLAD claims against Ocean that survive Defendants' Motions for Summary Judgment. This allows Plaintiffs to pursue a NJLAD aiding and abetting claim against Ocean's employees.

The NJLAD "does not impose individual liability upon non-supervisory employees." *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, 431 F. Supp. 3d 488, 514–15 (D.N.J. 2019) (quoting *Ross v. Amazon.com, Inc.*, Civ. A. No. 19-1864, 2019 WL 1227112, at *2 (D.N.J. Mar. 14, 2019)). Here, Plaintiffs assert Individual Defendants are employees of Ocean and each has supervisory authority over Plaintiffs. (ECF No. 55-2 at 50.) Defendants do not dispute this factual assertion. Therefore, Individual Defendants are proper defendants for Plaintiffs' NJLAD aiding and abetting claims.

"There are two forms of aiding and abetting under NJLAD: an active form and a passive form." *Long v. Leggett & Platt, Inc.*, Civ. A. No. 15-4907, 2017 U.S. Dist. LEXIS 158604, at *8 (D.N.J. Sept. 27, 2017) (citing *Lopez-Arenas v. Zisa*, Civ. A. No. 10-2668, 2012 U.S. Dist. LEXIS 37179, at *30 (D.N.J. Mar. 19, 2012)).

> To establish the active form, three elements must be proven: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation."

*Id*. at *8–9 (quoting *Hurley*, 174 F.3d at 127). "To establish the passive form, 'a plaintiff must show that the supervisor holds a duty to act against harassment and yet remains deliberately indifferent to its existence.'" *Id*. at *9 (quoting *Lopez-Arenas*, 2012 U.S. Dist. LEXIS 37179, at *31); *see also Doe v. Schwerzler*, Civ. A. No. 06-3529, 2008 U.S. Dist. LEXIS 66180, at *18–19 (D.N.J. Aug. 27, 2008) ("[A] supervisor can be individually liable when he breaches this duty

through deliberate indifference to the harassing conduct." (citing *Hurley*, 174 F.3d at 126)). "Individual liability, however, even in the context of failure to act, 'require[s] active and purposeful conduct.'" *Schwerzler*, 2008 U.S. Dist. LEXIS 66180, at *19 (citations omitted). Therefore, whether alleging an active or passive form of aiding and abetting, Plaintiffs must establish active and purposeful conduct on the part of Individual Defendants. "Simply having responsibility over employees and the workplace, or failing to protect an employee from discrimination, falls short of that standard." *Williams*, 2020 U.S. Dist. LEXIS 235893, at *60 (citing *Cicchetti*, 947 A.2d at 646).

Here, Plaintiffs point to only one active and purposeful conduct of Individual Defendants that may trigger the aiding and abetting liability under NJLAD. (*See* ECF No. 55-2 at 50–51.) That is "placing Wallace to sit with secretaries for three months while similarly situated employees, captains, had their own offices," as a "retaliatory action for her protected activity of filing this lawsuit." (*Id*. at 39, 50.) However, the alleged seat placement incident does not give rise to an inference of gender discrimination or retaliation. *See* Part III.D.1, *supra*. None of the NJLAD violations of Ocean that Plaintiffs may establish are directed to Wallace. In other words, Wallace's alleged seat placement does not represent a NJLAD violation that may be aided or abetted. Therefore, Plaintiffs fail to establish a prima facie NJLAD claim for aiding and abetting.

Accordingly, summary judgment is unwarranted on Count 3 with respect to Title VII Plaintiffs and Count 6 with respect to Title VII Plaintiffs and Neilson. Defendants' Motions for Summary Judgment are granted on Count 3 with respect to Neilson and Wallace, Count 6 with respect to Wallace, as well as Counts 9, 13, 18, 23, and 28.

### E.        Defendants Are Entitled to Reasonable Attorney's Fees

Defendants maintain they are entitled to reasonable attorney's fees and costs under 42

U.S.C. §§ 1988 and 2000e-5(k), because a part of the Amended Complaint is frivolous,

unreasonable, and without foundation. (ECF No. 52-2 at 47; ECF No. 53-3 at 44.) The Court

agrees.

A "court, in its discretion, may allow the prevailing party, other than the United States, a

reasonable attorney's fee" in various kinds of civil rights cases, including those brought under 42

U.S.C. § 1981 and Title VII. 42 U.S.C. § 1988(b). "The standards for assessing attorney's fees

under 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k) . . . are the same." *Boehler v. Middletown*

*Twp.*, Civ. A. No. 88-4009, 1991 U.S. Dist. LEXIS 4207, at *6 (D.N.J. Mar. 27, 1991) (citing

*Brown v. Borough of Chambersburg*, 903 F.2d 274, 277 n.1 (3d Cir. 1990)). Therefore, the Court

will ascertain Defendants' application for attorney's fees pursuant to 42 U.S.C. §§ 1988 and

2000e-5(k) under the same legal framework.

Pursuant to § 1988, "while prevailing plaintiffs 'should ordinarily recover an attorney's

fee unless special circumstances would render such an award unjust,' a prevailing defendant is

entitled to attorney's fees only 'upon a finding that the plaintiff's action was frivolous,

unreasonable or without foundation.'" *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151,

158 (3d Cir. 2017) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416–17

(1978)). "In a suit . . . involving both frivolous and non-frivolous claims, a defendant may

recover the reasonable attorney's fees he expended solely because of the frivolous allegations."

*Fox v. Vice*, 563 U.S. 826, 840–41 (2001). Here, Defendants argue two types of Plaintiffs' claims

are frivolous: (1) the § 1981 claims; and (2) the Title VII claims against Individual Defendants.

(ECF No. 52-2 at 46–47.) Defendants qualify as the prevailing party on these claims, on which

their Motions for Summary Judgment are granted. The only remaining issue is whether Plaintiffs' 1981 claims and Title VII claims against Individual Defendants are frivolous, unreasonable, or without foundation. The Court finds they are.

"A court, when determining whether an action was frivolous, unreasonable, or without foundation, considers: (1) whether the underlying claim had an arguable legal basis; and (2) the evidence that supported each claim." *D&D Assocs. v. Bd. of Educ. of N. Plainfield*, Civ. A. No. 03-1026, 2015 U.S. Dist. LEXIS 165583, at *81 (D.N.J. Dec. 10, 2015) (citing *Barnes*, 242 F.3d at 158–66); *see also EEOC v. U.S. Steel Corp.*, 877 F. Supp. 2d 278, 290 n.20 (W.D. Pa. 2012) ("A frivolous claim is one without factual or legal basis." (citing *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 503 (3d Cir. 1991))). "A finding of bad faith is not required." *Ernesto v. Rubin*, No. 97-4683, 2000 U.S. Dist. LEXIS 22038, at *10 (D.N.J. Mar. 21, 2000) (citing *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 750–51 (3d. Cir. 1997)). "[T]he Third Circuit set forth several factors for courts to consider in determining whether a fee award is appropriate to a Title VII defendant: '(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.'" *Id*. (quoting *Foster*, 123 F.3d at 751). "These factors are to be used as guidelines and not hard and fast rules, and determinations of frivolity are to be made on a case-by-case basis." *Id*. (quoting *Foster*, 123 F.3d at 751). "[C]ases where findings of 'frivolity' have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a . . . motion for involuntary dismissal." *Id*. (quoting *Foster*, 123 F.3d at 751).

As discussed in Part III.A, *supra*, Defendants are entitled to summary judgment on Plaintiffs' § 1981 claims, which are without any arguable legal basis. Section 1981 only covers racial discrimination, but Plaintiffs allege no incident of racial discrimination. Notably, Plaintiffs

cite the statute's plain language, which provides "[a]ll persons within the jurisdiction of the United States" with "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by *white citizens*." (ECF No. 55-2 at 29 (quoting 42 U.S.C. § 1981(a)) (emphasis added).) Yet, Plaintiffs offer no reason why the statute, despite its clear mandate against racial discrimination, should cover gender discrimination. Therefore, the Court finds Plaintiffs' § 1981 claims are frivolous. *See Mason v. Invision LLC*, Civ. A. No. 11-575, 2011 U.S. Dist. LEXIS 55704, at *3 (E.D. Mo. May 24, 2011) ("[Plaintiff's] § 1981 claims for age and gender discrimination . . . are legally frivolous."); *Jones v. Alta Colls., Inc.*, Civ. A. No. 08-1027, 2008 U.S. Dist. LEXIS 127486, at *21 n.10 (N.D. Ga. Nov. 21, 2008) ("[Plaintiff's] charge of discrimination . . . alleges only sex discrimination . . . the § 1981 claims are therefore frivolous."); *Peters v. Ralph Wilson Plastics, Div. of Dart & Kraft, Inc.*, Civ. A. No. 84-6216, 1985 U.S. Dist. LEXIS 20723, at *10 (N.D. Ill. Apr. 15, 1985) ("A claim of sex and age discrimination under §1981 is without any basis in law and . . . groundless.").

As discussed in Part III.B, *supra*, Defendants are entitled to summary judgment on Plaintiffs' Title VII claims against Individual Defendants, which are without any arguable legal basis. Title VII may only impose liability on an employer, but Plaintiffs assert Title VII claims against Individual Defendants who are employees. Notably, Plaintiffs recognize Title VII makes it "unlawful for an *employer* to discharge an individual; or otherwise to discriminate against any individual . . . because of a protected characteristic of that individual." (ECF No. 55-2 at 41 (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis added).) Yet, Plaintiffs offer no reason why the statute, despite its clear mandate against discriminatory practices committed by an employer, could impose liabilities against individual employees. Therefore, the Court finds Plaintiffs' Title VII claims against Individual Defendants are frivolous. *See Ernesto*, 2000 U.S. Dist. LEXIS

22038, at *11–12 (finding that the "plaintiff's Title VII claims against [the defendant co-worker] were frivolous," because "Title VII does not permit a cause of action against individuals" and "such claims by plaintiff had no basis in law"); *see also Greco v. Velvet Cactus, LLC*, Civ. A. No. 13-3514, 2014 U.S. Dist. LEXIS 164903, at *7–8 (E.D. La. Nov. 25, 2014) ("[A] 'claim under Title VII is enforceable only against an employer, not an employee.' Accordingly, if plaintiff did assert a Title VII claim against [the defendant employee], defendants are clearly entitled to attorney's fees, as plaintiff's claim would have 'relie[d] on an undisputably meritless legal theory.'" (quoting *Doe v. Silsbee Indep. Sch. Dist.*, 440 F. App'x 421, 425 (5th Cir. 2011))); *Larson v. Sharp*, Civ. A. No. 08-101, 2008 U.S. Dist. LEXIS 36965, at *27 n.20 (S.D. Tex. May 6, 2008) ("[T]o the extent that [p]laintiff attempts to bring a Title VII claim against an employee of the [defendant], such a claim must also be dismissed as frivolous.").

Therefore, Plaintiffs' § 1981 claims and Title VII claims against Individual Defendants are frivolous. Defendants are entitled to the reasonable attorney's fees expended solely because of these frivolous claims.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motions for Summary Judgment are **GRANTED** on: (1) Counts 2, 4, 7, 9, and 11 through 30; (2) Count 3 with respect to Neilson and Wallace; (3) Count 6 with respect to Wallace; and (4) Count 8 to the extent it involves a retaliative hostile work environment. The remaining portions of Defendants' Motions for Summary Judgment and Plaintiffs' Cross Motion for Summary Judgment are **DENIED**. Defendants are entitled to the reasonable attorney's fees expended solely because of Counts 2, 4, 7, 11, 12, 14, 15, 16, 17, 19, 20, 21, 22, 24, 25, 26, 27, 29, and 30.

An appropriate order follows.

**Date: September 30, 2021**          */s/ Brian R. Martinotti*
                                      **HON. BRIAN R. MARTINOTTI**
                                      **UNITED STATES DISTRICT JUDGE**